# UNION PACIFIC RAILROAD CO. *v.* SHEEHAN

No. 78–344.   Decided December 4, 1978

Per Curiam.

Petitioner, the Union Pacific Railroad Co., discharged respondent for violating one of its employee work rules. Respondent thereupon began an action in state court alleging wrongful discharge and denial of a fair hearing. While that claim was pending in state court, we decided *Andrews* v. *Louisville & Nashville R. Co.*, 406 U. S. 320 (1972), overruling *Moore* v. *Illinois Central R. Co.*, 312 U. S. 630 (1941). *Andrews* held that a railroad employee alleging a violation of a collective-bargaining agreement must submit such a dispute to the National Railroad Adjustment Board for resolution in accordance with the provisions of the Railway Labor Act, 44 Stat. (part 2) 577, as amended, 45 U. S. C. §§ 151–188. Following our decision in *Andrews,* respondent and Union Pacific stipulated to dismissal of the state-court suit and the case was dismissed without prejudice. Respondent then instituted a proceeding before the Adjustment Board. After full written submissions by both parties and two hearings, the Adjustment Board dismissed respondent's claim because he had failed to file his appeal to the Adjustment Board within the time limits prescribed by the collective-bargaining agreement.

After the Adjustment Board dismissed his claim, respondent filed a complaint in the United States District Court for the District of Utah, seeking an order directing the Adjustment Board to hear the merits of his case, or, in the alternative, for reinstatement and a money judgment. Jurisdiction in the District Court was based upon § 3 First (q) of the Act, 45 U. S. C. § 153 First (q).[1] Respondent claimed that the time requirements of the collective-bargaining agreement were tolled during the pendency of his state-court action and that the Adjustment Board should be required to hear and decide his claim on the merits. While admitting that respondent had "persuasively argued for tolling the time limits," the District Court nonetheless affirmed the Adjustment Board's order and awarded summary judgment to petitioner. The court held that respondent had failed to demonstrate the existence of any of the grounds for reversal of an Adjustment Board decision set forth in § 153 First (q), and that there was no

---

[1] Section 153 First (q) provides, in pertinent part:

"If any employee or group of employees, or any carrier, is aggrieved by the failure of any division of the Adjustment Board to make an award in a dispute referred to it, or is aggrieved by any of the terms of an award or by the failure of the division to include certain terms in such award, then such employee or group of employees or carrier may file in any United States district court in which a petition under paragraph (p) could be filed, a petition for review of the division's order. . . . The court shall have jurisdiction to affirm the order of the division, or to set it aside, in whole or in part, or it may remand the proceedings to the division for such further action as it may direct. On such review, the findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order. The judgment of the court shall be subject to review as provided in sections 1291 and 1254 of title 28."

"legal principle under which it [could] grant [respondent] relief without violating the provisions of the Railway Labor Act." 423 F. Supp. 324, 329 (1976).

The Court of Appeals for the Tenth Circuit reversed the District Court and remanded the case to the Adjustment Board. 576 F. 2d 854 (1978). At the beginning of its opinion, the court stated:

> "The real issue here is whether the Board's determination that it lacked jurisdiction because of non-compliance with the limitations in the modified collective bargaining agreement deprived Sheehan of his due process rights.
>
> "We conclude the Board's failure to address the merits of plaintiff Sheehan's claim denied him due process. . . ." *Id.*, at 855–856.

The court then canvassed prior decisions concerning the Railway Labor Act, and recognized that these cases had established that the scope of judicial review of Adjustment Board decisions is "among the narrowest known to the law." Nonetheless, the court believed it "possible" that the extent of judicial review of *"purely legal issues"* decided by the Adjustment Board should be re-examined in light of the "implications arising from, and the developments since" our decision in *Andrews.* 576 F. 2d, at 856. The court then concluded as follows:

> "As the district court noted, a persuasive argument can be made for the tolling of time limits. The court in *Andrews* expressed the view that an agreement under the Railway Labor Act was a federal contract governed and enforceable by federal law in the federal courts. . . . The applicability of equitable tolling to the agreement in question is not in doubt. While we do not pass on the merits of the tolling issue, we hold the failure of the Board to consider tolling under these circumstances de-

prived Sheehan of an opportunity to be heard in violation of his right to due process." *Id.,* at 857.[2]

If the Court of Appeals' remand was based on its view that the Adjustment Board had failed to consider respondent's equitable tolling argument, the court was simply mistaken. The record shows that respondent tendered the tolling claim to the Adjustment Board, which considered it and explicitly rejected it. App. to Pet. for Cert. 22.[3] If, on the other hand,

---

[2] The Court of Appeals rejected respondent's request for attorney's fees because 45 U. S. C. § 153 First (q), the section on which jurisdiction in the District Court was premised, does not provide for an award of attorney's fees. 576 F. 2d, at 857–858. In his brief in opposition to the petition for a writ of certiorari, respondent urges this Court to reverse the decision of the Court of Appeals on the issue of attorney's fees and to award him attorney's fees incurred in this Court and the courts below. The question whether the Court of Appeals correctly rejected respondent's claim for attorney's fees is not properly before the Court since respondent did not file a cross-petition for certiorari. *FEA* v. *Algonquin SNG, Inc.,* 426 U. S. 548, 560 n. 11 (1976); see *Mills* v. *Electric Auto-Lite Co.,* 396 U. S. 375, 381 n. 4 (1970). And we reject respondent's request for attorney's fees in this Court. He bases his claim for fees in this Court upon 45 U. S. C. § 153 First (p). Without passing upon the propriety of respondent's reliance on subsection (p), it is sufficient to state that this subsection authorizes an award of attorney's fees only if the "petitioner shall finally prevail" and that in view of our holding today, respondent has failed to triumph.

[3] In support of its dismissal of respondent's appeal, the Adjustment Board stated:

"Nor do we agree with [respondent] that the time limits did not commence running until the Utah court dismissed claimant's breach of contract suit in November, 1972. Filing of the civil suit did not have the effect of obviating the time limits in the [collective-bargaining] Agreement. When claimant decided to pursue his remedies with this Board he was obligated to do so in the manner prescribed in the applicable Agreement in effect on the property. Since he failed to comply with the time limits of the Agreement, we have no standing to decide the merits of the claim and we are constrained to dismiss the claim for non compliance [*sic*] with the applicable time limits." App. to Pet. for Cert. 22.

the Court of Appeals intended to reverse the Adjustment Board's rejection of respondent's equitable tolling argument, the court exceeded the scope of its jurisdiction to review decisions of the Adjustment Board.

Judicial review of Adjustment Board orders is limited to three specific grounds: (1) failure of the Adjustment Board to comply with the requirements of the Railway Labor Act; (2) failure of the Adjustment Board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption. 45 U. S. C. § 153 First (q). Only upon one or more of these bases may a court set aside an order of the Adjustment Board. See *Andrews* v. *Louisville & Nashville R. Co.*, 406 U. S., at 325; *Locomotive Engineers* v. *Louisville & Nashville R. Co.*, 373 U. S. 33, 38 (1963). There is no suggestion of fraud or corruption here. And the Adjustment Board certainly was acting within its jurisdiction and in conformity with the requirements of the Act by determining the question of whether the time limitation of the governing collective-bargaining agreement was tolled by the filing of respondent's state-court action. Respondent does not contend otherwise. Accordingly, we agree with the District Court that respondent simply failed to demonstrate the existence of any of the grounds for review set forth in § 153 First (q).

Characterizing the issue presented as one of law, as the Court of Appeals seemed to do here, does not alter the availability or scope of judicial review: The dispositive question is whether the party's objections to the Adjustment Board's decision fall within any of the three limited categories of review provided for in the Railway Labor Act. Section 153 First (q) unequivocally states that the "findings and order of the [Adjustment Board] shall be conclusive on the parties" and may be set aside only for the three reasons specified therein. We have time and again emphasized that this statutory language means just what it says. See, *e. g., Gunther* v. *San Diego & A. E. R. Co.*, 382 U. S. 257, 263 (1965);

*Locomotive Engineers* v. *Louisville & Nashville R. Co., supra,* at 38; *Union Pacific R. Co.* v. *Price,* 360 U. S. 601, 616 (1959). And nothing in our opinion in *Andrews* suggests otherwise. The determination by the Adjustment Board that respondent had failed to file his appeal within the time limits prescribed by the governing collective-bargaining agreement is one which falls within the above-quoted language precluding judicial review.

A contrary conclusion would ignore the terms, purposes and legislative history of the Railway Labor Act. In enacting this legislation, Congress endeavored to promote stability in labor-management relations in this important national industry by providing effective and efficient remedies for the resolution of railroad-employee disputes arising out of the interpretation of collective-bargaining agreements. See *Gunther* v. *San Diego & A. E. R. Co., supra; Union Pacific R. Co.* v. *Price, supra; Slocum* v. *Delaware, L. & W. R. Co.,* 339 U. S. 239 (1950). The Adjustment Board was created as a tribunal consisting of workers and management to secure the prompt, orderly and final settlement of grievances that arise daily between employees and carriers regarding rates of pay, rules and working conditions. *Union Pacific R. Co.* v. *Price, supra,* at 611; *Elgin J. & E. R. Co.* v *Burley,* 327 U S. 661, 664 (1946). Congress considered it essential to keep these so-called "minor" disputes within the Adjustment Board and out of the courts. *Trainmen* v. *Chicago, R. & I. R. Co.,* 353 U. S. 30, 40 (1957). The effectiveness of the Adjustment Board in fulfilling its task depends on the finality of its determinations. Normally finality will work to the benefit of the worker: He will receive a final administrative answer to his dispute; and if he wins, he will be spared the expense and effort of time-consuming appeals which he may be less able to bear than the railroad. *Union Pacific R. Co.* v. *Price, supra,* at 613–614. Here, the principle of finality happens to cut the other way. But evenhanded application of this principle is surely what the Act requires.

The Adjustment Board determined that respondent had not filed his appeal within the time requirements of the collective-bargaining agreement. That decision is final and binding upon the parties, and neither the District Court nor the Court of Appeals had authority to disturb it. The motion of the respondent for leave to proceed *in forma pauperis* and the petition for certiorari are therefore granted, and the judgment of the Court of Appeals is

*Reversed.*

MR. JUSTICE BRENNAN and MR. JUSTICE MARSHALL concur in the result.