Clark B. RICHINS, Bernie L. Stark, Ralph G. Victor, Paul Bennett, Earl F. Dustin, Mike Clem Merrill, Steven R. Hymus, Plaintiffs-Appellants,

v.

SOUTHERN PACIFIC COMPANY (Pacific Lines); Brotherhood of Railway Carmen of the United States and Canada; System Federation No. 114, Railway Employees Department, AFL–CIO; Lodge # 635, Does 1 through 50, Inclusive, Defendants-Appellees.

No. 78–1887.

United States Court of Appeals, Tenth Circuit.

Argued Jan. 21, 1980.

Decided April 28, 1980.

Robert A. Bush of Taylor, Roth & Grant, Los Angeles, Cal., for plaintiffs-appellants.

L. Ridd Larson of Ray, Quinney & Nebeker, Salt Lake City, Utah, William F. Adams, Robert S. Bogason and Gary A. Laakso, San Francisco, Cal., with him on brief, for defendant-appellee Southern Pac. Co.

Thomas A. Woodley, Washington, D. C., Edward J. Hickey, with him on brief, Mulholland, Hickey, Lyman, McCormick, Fisher & Hickey, Washington, D. C., for Union defendants-appellees.

Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.

McKAY, Circuit Judge.

Seven employees or former employees of the Southern Pacific Transportation Company (Railroad) brought this suit against the Railroad and the Brotherhood of Railway Carmen and two of its subordinate organizations (Union). The seven allege that they were demoted and then laid off in violation of the applicable collective bargaining agreement and that the Union breached its duty of fair representation by failing to enforce the agreement. The plaintiffs ask for reinstatement with full seniority, lost wages and benefits, punitive damages, and various costs and fees. The district court dismissed the action against both the Railroad and the Union for lack of jurisdiction, holding that the plaintiffs had not exhausted their administrative remedies before the National Railroad Adjustment Board (Board).[1] Later, in a separate ruling,

---

1. The parties also filed motions for summary judgment. The district court, however, decided only the jurisdictional issue, and that issue alone is before us on appeal.

the court refused to retain jurisdiction over the matter while administrative remedies were sought. Plaintiffs appeal.

The dispute derives from a 1968 merger of the Railroad with another railroad company. The merger required a modification of the basic collective bargaining agreement to govern the dovetailing of two seniority rosters. Plaintiffs allege that, during each year from 1972 until 1975, they were demoted and subsequently furloughed from their positions as "Upgraded Carmen Apprentices," while "Upgraded Carmen Helpers," who should have been demoted first under a 1965 Memorandum of Agreement, continued to work without demotion. Plaintiffs further allege that Union officials, many of whom were former employees of the merging company, consistently misled them about their rights and demonstrated a persistent antagonism toward the apprenticeship program. As a result, plaintiffs were prevented from filing a timely claim before the Board. The Railroad and Union counter with the argument that certain employees, including the Upgraded Helpers, were given special protection under the 1968 Reorganization Agreement. Under this view, the Union failed to aid plaintiffs not because of antagonism, but because the plaintiffs' claims lacked merit under the contract.

If this suit had been brought against the Railroad only, we would have no difficulty in determining the proper disposition. The dispute between plaintiffs and the Railroad is clearly a "minor" one—that is, "between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. § 153 First (i). As the Supreme Court has emphatically told us, "Congress considered it essential to keep these so-called 'minor' disputes within the Adjustment Board and out of the courts." *Union Pacific Railroad v. Sheehan*, 439 U.S. 89, 94,

99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978). *See also Andrews v. Louisville & Nashville Railroad*, 406 U.S. 320, 325, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972).

Similarly, had plaintiffs brought only the fair representation claim against the Union, our duty would be clear. The Railway Labor Act provides no explicit jurisdiction for the Board to resolve employee-union disputes. In *Czosek v. O'Mara*, 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970), also a case arising from the dislocations of a merger, the Court left no doubt about the limits of Board jurisdiction:

> And surely it is beyond cavil that a suit against the union for breach of its duty of fair representation is not within the jurisdiction of the National Railroad Adjustment Board or subject to the ordinary rule that administrative remedies should be exhausted before resort to the courts. The claim against the union defendants for the breach of their duty of fair representation is a discrete claim quite apart from the right of individual employees expressly extended to them under the Railway Labor Act to pursue their employer before the Adjustment Board.

*Id.* at 27–28, 90 S.Ct. at 772 (citations omitted). *See also Glover v. St. Louis-San Francisco Railway*, 393 U.S. 324, 329, 89 S.Ct. 548, 551, 21 L.Ed.2d 519 (1969).

This case is a hybrid which fits neither of the above models, and it is not a case where the claims and prayers for relief against the Railroad and Union are so easily separable as to warrant bifurcating the proceeding—with the claim against the Railroad presented to the Board and the fair representation claim heard in federal court. Because reinstatement with seniority is sought, plaintiffs could not secure full relief in federal court if the Railroad were not a party.[2] Furthermore, the alleged facts, viewed in a light most favorable to plaintiffs, are consistent with a pattern of collusion between Union and Railroad. The district court's concern about the duplication of effort and

---

**2.** Indeed, the plaintiffs argue that they could not secure any relief if required to take their claims to the Board because the Union's actions here prevented the filing of a timely claim.

the possibly inconsistent results should two forums be required to interpret the contract is well-founded. Although the Supreme Court in *Czosek* did not decide whether "the employer may *always* be sued with the union when a single series of events gives rise to claims against the employer for breach of contract and against the union for breach of the duty of fair representation," 397 U.S. at 30, 90 S.Ct. at 773–774 (emphasis added), the Court has explicitly permitted such suits in federal court and denied Board jurisdiction. This is the only resolution of that problem to receive Supreme Court approval. *See Glover v. St. Louis-San Francisco Railway*, 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969).

Unless *Union Pacific Railroad v. Sheehan*, 439 U.S. 89, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978), has repudiated those portions of *Glover* and *Czosek* which discuss federal court jurisdiction of hybrid cases, we must find the district court's order of dismissal improper. In *Sheehan*, the Court determined that the Board has exclusive jurisdiction over minor disputes between employees and carriers. However, the Court did not discuss fair representation cases. As strong as the *Sheehan* Court's exclusivity language is, we find no authority to repudiate the equally strong language of *Czosek* and *Glover*. *See also Conley v. Gibson*, 355 U.S. 41, 44–45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Steele v. Louisville & Nashville Railroad*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944). Absent statutory command, we are reluctant to grant to the Board jurisdiction over fair representation cases and, absent clearer direction from the Supreme Court, we are unwilling to require bifurcated jurisdiction of hybrid cases.

We recognize that other circuits have created a form of pendent jurisdiction permitting the Board to hear fair representation cases that are intertwined with minor disputes. *See, e. g., Goclowski v. Penn Central Transportation Co.*, 571 F.2d 747, 755–56 (3d Cir. 1978). The district court here relied on *Goclowski* for the proposition that all disputes "which primarily [involve] contractual interpretation," *id.* at 756, require the "expertise of the Board in construing railroad labor contracts." *Id.* at 755. However appealing that proposition might be if we were writing on a *tabula rasa*, neither the statute nor the Supreme Court cases support it.[3] In addition, we hesitate to place on the district courts the perhaps impossible burden of determining, at an initial stage of the proceeding, whether the ultimate resolution of the case will depend "primarily" on contract interpretation. We note that the complaint here charges Union officials with maliciously discriminatory behavior. *See, e. g.*, Record, vol. 1, at 9. This is sufficient to create a fair representation claim which may not depend primarily on the terms of the contract. *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 571, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976); *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967); *Foust v. IBEW*, 572 F.2d 710, 715 (10th Cir. 1978).

No Supreme Court authority permits Board jurisdiction over a breach of fair representation claim. The dismissal of the claim against the Union is therefore reversed. Because we believe that *Sheehan* does not repudiate the doctrine of hybrid jurisdiction, the dismissal of the claim against the Railroad was also improper.

REVERSED AND REMANDED.

---

**3.** The Third Circuit believes that "*Glover* is not applicable when the basis of the claim is primarily construction and interpretation of existing collective bargaining agreements." 571 F.2d at 756 n. 13. Since few fair representation cases will not have elements of contractual interpretation, the danger of emasculating the mandates of *Glover* and *Czosek* is great. Even if the Board validly has jurisdiction in some fair representation cases, we note that the alleged facts here are strikingly similar to those of *Czosek*. There the jurisdictional issue was "beyond cavil." 397 U.S. at 28, 90 S.Ct. at 772.