James A. CONNOR and William C. Warner, Plaintiffs,

v.

BROTHERHOOD OF RAILWAY, AIRLINE AND STEAMSHIP CLERKS, AFL–CIO; BRAC Local Lodge # 703; BRAC Local Lodge # 265; BRAC Local Lodge # 949; BRAC Local Lodge # 206; BRAC System Board of Adjustment No. 86; Al Archual and Fred J. Kroll, Consolidated Rail Corporation, Defendants.

Civ. A. No. 79–1511.

United States District Court, M. D. Pennsylvania.

Aug. 12, 1980.

Robert Ufberg, Nancy Abrams, Rosenberg & Ufberg, Scranton, Pa., for plaintiffs.

John J. Dunn, Dunn & Byrne, Scranton, Pa., Harold A. Ross, Ross & Kraushaar Co., Cleveland, Ohio, for BRAC.

Cody H. Brooks, Henkelman, Kreder, O'Connell & Brooks, Scranton, Pa., Hermon M. Wells, Mark E. Lichty, Philadelphia, Pa., for Conrail.

### MEMORANDUM AND ORDER

CONABOY, District Judge.

This action arose as a result of the reorganization and consolidation of the railroad system under the Regional Rail Reorganization Act of 1973.

The particular dispute involved here concerns the method used to determine the relative seniority rights of railroad employ-

ees whose employers merged into one large corporation. Resolution of the dispute was attempted through union channels, but the employees remained dissatisfied with that outcome. Relief was also sought from Conrail itself, but also without the results desired by Plaintiffs. Plaintiffs then initiated this action in the district court against Conrail and their unions, on two grounds: first, that Conrail improperly listed forty-three employees on the Seniority Roster for District 8 in violation of the applicable agreements reached by the union and the company, and second, that the union failed to represent its members fairly and equally in reaching these agreements, and in its processing of the protests filed.

The Defendants have filed a motion to dismiss, which has been fully briefed by both parties.

The basic facts which underly the present controversy are not in dispute. The Defendants herein are officers and local branches of the Brotherhood of Railway, Airline and Steamship Clerks (AFL–CIO), hereinafter referred to as BRAC, and the Consolidated Rail Corporation. Plaintiffs are Conrail employees whose employment rights are affected by the seniority rosters challenged here. The individuals whose seniority status is the crux of the dispute here were formerly employed by Central of New Jersey on the part of that operation which was located in eastern Pennsylvania.

Central Railroad of New Jersey (hereinafter referred to as CNJ) ceased its operations within the Commonwealth of Pennsylvania on or about April 4, 1972. As of that date, the forty–five CNJ employees who had worked for that line in Pennsylvania accepted employment with the Lehigh Valley Railroad. Pursuant to an order of the Interstate Commerce Commission, these employees were placed on the Lehigh Valley Seniority Roster with a seniority date of April 1, 1972, but they retained their original seniority dates on the CNJ Roster.

In 1976, the Consolidated Rail Corporation (Conrail) acquired the Erie Lackawanna, the Lehigh Valley, the Reading, the Lehigh and New England and the Lacka-

wanna and Wyoming Valley Railroads. In January and February of 1976, BRAC and Conrail entered into individual implementing agreements pursuant to 45 U.S.C. § 774(b), which were to govern employer–employee relations from the time of the conveyances to Conrail until new collective bargaining agreements could be negotiated between Conrail and the various representatives of each craft. The first matter addressed by the individual implementing agreements signed by Al Archual and the Conrail representative was the consolidation of seniority rosters.

Section III. A. provided for the establishment of new seniority district rosters in the following manner:

A. All employees accepting employment with the Corporation who appear on the seniority rosters consolidated under Article I and other existing rosters on the day prior to conveyance which are located within the territory of a new seniority district shall be dovetailed into the new seniority district rosters on the basis of their earliest seniority date on such rosters.

The new Conrail Seniority District 8 consolidated the lists of the former Lehigh Valley, Erie Lackawanna, Reading and Lehigh and New England lines. When the first consolidated seniority roster came out in October of 1976, the forty–five Lehigh Valley employees who had formerly been employees of CNJ appeared on the District 8 roster with their prior CNJ dates rather than their Lehigh Valley date of April 1, 1972. This listing was strongly objected to by several other BRAC members in District 8. Their position is that CNJ was no longer in existence in Pennsylvania at the time the District 8 roster was posted, and the proper date for determining these employees' seniority date is their Lehigh Valley date of April 1, 1972.

William Warner, a Conrail employee and member of BRAC submitted a protest of the roster to Robert O'Neill, Conrail Manager for Labor Relations on February 19, 1978. This protest was denied, on the basis that the roster was proper. Warner pur-

sued his intra-union remedies. He submitted a claim to his local union representative which was denied. He then followed the union appeal procedure, and his claim was finally denied after several hearings, by the BRAC International Executive Council in December of 1978.

Plaintiff Connor instituted his roster protest by bringing it to the Conrail representative as provided in the Interim Rules Agreement. This was denied.

Warner and Connor, on behalf of themselves and the over four hundred other Conrail employees that they claim are adversely affected by the allegedly improper roster, brought this action in the district court on December 10, 1979.

Plaintiffs seek to recover from both Conrail and the union. They claim that Conrail's action in adopting the current roster is a denial of their seniority rights under the Interim Agreements, and is therefore a breach of these agreements.[1] They seek to enjoin Conrail from continuing to list these employees on the seniority roster with their prior CNJ dates, and to require Conrail to list them with the April 1, 1972 date, and seek damages in the form of benefits lost by the other employees as a result of the prejudicial listing.

Their second claim, against the union, alleges that the union breached its duty of fair representation by refusing to aid Plaintiff Warner in his protest and thereby not representing all employees fairly and equally.

Defendant's motion to dismiss alleges that the Court does not have jurisdiction to entertain the present action in that the National Railroad Adjustment Board has exclusive jurisdiction to hear Plaintiffs' grievances. Plaintiffs argue that the Court has jurisdiction to hear their claims. The boundaries of jurisdictional power between the courts and the Board are clearly defined. The Board shall have jurisdiction over disputes which arise out of the "interpretation or application" of collective agreements. 45 U.S.C. § 153 First (i). As the Supreme Court has stated, "Congress considered it essential to keep these so-called 'minor' disputes within the Adjustment Board and out of the courts." *Union Pacific Railroad Co. v. Sheehan*, 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978). In contrast, where a dispute does not involve the terms of an agreement, it is not a matter within the Board's jurisdiction. That is the case with regard to suits brought by employees against the union for breach of their duty of fair representation, and accordingly the District Court has jurisdiction to hear those claims. The question before the Court in the present action is whether the Court should retain jurisdiction over an action which involves one claim which concerns the interpretation of an agreement and another claim which concerns the union's duty of fair representation. It is the opinion of the Court today that the proper approach to this case is bifurcation of the two claims. Accordingly we will dismiss Plaintiffs' first count, which alleges that Defendants improperly interpreted and applied Section III of the January 26, 1976 agreement, and we will retain jurisdiction over Plaintiffs' second count, which charges that the union failed to fulfill its duty of fair representation.

Several cases in recent years have dealt with the jurisdictional power of the federal courts over disputes which allege improper action by both the union and employer. Plaintiffs urge the Court to adopt the reasoning of *Richins v. Southern Pacific Co.*, 620 F.2d 761 (10th Cir. 1980), a case which arose out of a merger of the Southern Pacific Transportation Company and another

---

1. Plaintiffs attempt to argue in their briefs that the union and employer conspired to place the CNJ employees on an improper seniority status. However, their complaint fails to allege a conspiracy in that regard; there is no mention of any agreement between the union and employer to apply the seniority lists in the manner in which they were applied. The only mention of collusion in the complaint is paragraph 47, which alleges that BRAC "aided" Conrail by "refusing to protest the improper listings." This is not a proper foundation for Plaintiffs' claims in that (1) it drops only the barest hint of conspiracy and collusion, and (2) it only relates to Count II of Plaintiffs' complaint, the breach of fair representation claim.

railroad. In *Richins* the Tenth Circuit Court of Appeals entertained the claims against the railroad and the Union, even though the dispute against the railroad involved the interpretation of an agreement, a matter which normally would be within the jurisdiction of the N.R.A.B. Defendants ask the Court to follow *Goclowski v. Penn Central Transportation Company*, 571 F.2d 747 (3rd Cir. 1977), a case which also involved claims against both union and employer. In *Goclowski* the Third Circuit Court of Appeals dismissed the claim against the employer because it was based upon the terms of the collective bargaining agreement, and it entertained the claim against the union for breach of its duty of fair representation. Obviously because *Goclowski* represents the law in this Circuit, and because it is not distinguishable on its facts,[2] the Court is bound to follow its holding. But we are also convinced that *Goclowski* is more in keeping with the intent of the National Railway Labor Act and with the trend of recent decisions of the United States Supreme Court.

In *Union Pacific Railroad Co. v. Sheehan*, supra, the Supreme Court addressed the purpose and intent of the Railway Labor Act.

"In enacting this legislation, Congress endeavored to promote stability in labor–management relations in this important national industry by providing effective and efficient remedies for the resolution of railroad–employee disputes arising out of the interpretation of collective-bargaining agreements." 439 U.S. at 94, 99 S.Ct. at 402.

And with regard to disputes against both union and employer, the Court in *Czosek v.*

*O'Mara*, 397 U.S. 25, 28, 90 S.Ct. 770, 773, 25 L.Ed.2d 21 (1970) stated that the claim against the union Defendants for breach of their duty of fair representation is a "discrete claim quite apart from the right of individual employees expressly extended to them under the Railway Labor Act to pursue their employer before the Adjustment Board." Thus the mandate of Congress and the Supreme Court has been to defer to the Adjustment Board's expertise when the question involves contract interpretation, and also to treat disputes against union and employer as discrete claims. Therefore it appears that *Goclowski* more closely followed this mandate when it split the claims against union and employer and declared that the question of the interpretation of a collective bargaining agreement was properly a matter to be entertained by the National Railway Adjustment Board.[3] The Supreme Court noted in the *Sheehan* case, supra, that Congress intended to keep these disputes out of the Courts. It does not make sense to hold that a Plaintiff could bypass the Board and bring these disputes into Court simply by alleging collusion between the union and employer.

Accordingly, the Court holds today that Count I of Plaintiffs' Complaint, which alleges that Section III of the January 25, 1976 agreement was improperly interpreted and applied by Defendants in the preparation of the seniority list for District 8, is not properly before the district court. However, Count II of Plaintiffs' complaint, which alleges that the union breached its duty of fair representation, is properly before the Court. Therefore an Order will be entered today granting Defendants' Motion to Dismiss Count I of Plaintiffs' Complaint

---

**2.** Despite arguments by Plaintiffs to the contrary, we are of the opinion that the facts in the present case are substantially similar to *Goclowski* and *Richins*. Each action involves a claim by a group of employees against the employer for misapplication of an agreement and against the union for breach of its duty of fair representation.

**3.** The *Richins* Court cited *Glover v. St. Louis–San Francisco Railway Co.*, 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969), and *Czosek v. O'Mara*, supra, as establishing a doctrine of

hybrid jurisdiction. *Glover* involved allegations that the union joined with the employer in a series of racially discriminatory practices in violation of Plaintiff's constitutional rights. In *Czosek* the Court held that the claims should be separated absent allegations tying together union and employer. We do not agree that this amounts to a doctrine of hybrid jurisdiction, and we also note our holding that Plaintiffs have not properly alleged collusion with regard to Count I of the Complaint.

and denying Defendants' Motion to Dismiss Count II.[4]

---

**4.** Count II is also the subject of a motion for summary judgment filed by Defendants. The Court will consider that question separately.