**J.W. CHAMBERS, Appellant,**

v.

**BURLINGTON NORTHERN, INC., Appellee.**

**No. 80–2344.**

United States Court of Appeals, Tenth Circuit.

Nov. 2, 1982.

David B. Kiker, Aurora, Colo. (Morrisard & Rossi, P.C., Aurora, Colo., with him on the briefs), for appellant.

Todd S. Welch, Cheyenne, Wyo. (Godfrey & Sundahl, Cheyenne, Wyo., with him on the brief), for appellee.

Before SETH, McKAY and BREITEN-STEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This case presents a labor dispute arising out of an employee transfer after the merger of several railways. Jurisdiction is asserted under 28 U.S.C. §§ 1331, 1336, and 1337. The district court dismissed because of lack of subject matter jurisdiction. We affirm.

J.W. Chambers, the original plaintiff, was employed by Burlington Northern, Inc., BN, a rail carrier, as an engineer-fireman. He died during the pendency of this appeal and his widow, Mildred Chambers, was substituted as plaintiff-appellant. Defendant-appellee BN is a rail carrier formed by the 1970 merger of three railways. The Interstate Commerce Commission, ICC, pursuant to 49 U.S.C. § 5(2)(f), required "an equita-ble arrangement to protect the interests of the railroad employees affected." BN executed a "Merger Protection Agreement," MPA. ICC approved both the MPA and the merger.

As an engineer-fireman, Chambers had an August 16, 1947, seniority date at BN's West Hannibal (Missouri) Seniority District. On July 25, 1974, Chambers was transferred to BN's Sheridan, Wyoming, District. He and BN made a written agreement, R. p. 10, which noted that he voluntarily relinquished his Hannibal seniority and accepted transfer to Sheridan. The agreement provided:

> "In consideration of your relinquishment of seniority and transfer, you will receive $12,000 (Twelve Thousand Dollars), less federal and state taxes as a relocation allowance."

The agreement also provided that Chambers would receive certain incidental moving expenses.

While working as a fireman, Chambers was subject to a collective bargaining agreement between BN and the United Transportation Union, of which he was a member. While working as an engineer, he was under a similar agreement between BN and the Brotherhood of Locomotive Engineers. Neither of the bargaining agreements in effect at the time of the Chambers-BN agreement had provisions applicable to seniority or allowances on transfer. On May 23, 1975, ten months after the Chambers-BN agreement, BN and the Unions made new collective bargaining agreements which provided that on transfers employees would be paid $22,000 in installments and would retain the seniority held in the district from which they transferred. In 1980, Chambers brought this suit, (1) to enjoin enforcement of his individual agreement with BN, (2) to order BN "to reinstate Plaintiff's seniority with the date and location of his original seniority under the Merger Protection Agreement," (3) to recover attorney fees, and (4) to require BN to pay him the additional $10,000 provided in the agreement of May 23, 1975.

The suit, filed in the United States District Court for the District of Montana, named both BN and the United States as defendants. Over Chambers' objection, the case was transferred to the District of Wyoming. With the consent of both Chambers and BN, the United States was dismissed as a defendant. The court sustained the BN motion to dismiss on the ground that it lacked subject matter jurisdiction. In so doing it relied on the decision of the Montana court in *Clausen v. Burlington Northern, Inc.*, 90 Labor Cases, CCH, ¶ 12,377, p. 25,899 et seq.

BN contends that the court did not have subject matter jurisdiction because the requested relief requires interpretation and application of the MPA and is within the exclusive jurisdiction of the National Railway Adjustment Board. See 45 U.S.C. § 153. Chambers argues that the case presents the validity of the Chambers-BN contract and is within district court jurisdiction. He does not say on what particular jurisdictional statute he relies.

Chambers does not allege violation by BN of the bargaining agreements in effect when he made his agreement with BN. His complaint, Paragraph 14, R. p. 15, charges violation of the MPA. In his brief he argues that his agreement with BN is void because it provides transfer seniority and allowance less favorable to him than that provided in the collective bargaining agreements made ten months later.

Reliance is had on *Order of Railway Telegraphers v. Railway Express Agency*, 321 U.S. 342, 64 S.Ct. 582, 88 L.Ed. 788. The issue there was whether individual agreements could supersede or expand the provisions of existing collective bargaining agreements. The Court held that they could not. Chambers specifies no provision of the bargaining agreement, effective when he made his contract with BN, which was superseded or expanded by his agreement. The record does not contain the bargaining agreement then in effect.

*J.I. Case Co. v. National Labor Relations Board*, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762, considered individual employee contracts against the background of the National Labor Relations Act. It says, p. 337, 64 S.Ct. at 580, that an individual contract may not "be used to forestall bargaining or to limit or condition the terms of the collective agreement." Additionally it says, p. 339, 64 S.Ct. at 581, that in making an individual agreement the employer "may not incidentally exact or obtain any diminution of his own obligation or any increase of those of employees in matters covered by collective agreement." *Order of Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 64 S.Ct. 582, 88 L.Ed. 788, an action involving the Railway Labor Act of 1929, says, Id. at 347, 64 S.Ct. at 585, that the J.I. Case decision regarding individual agreements is generally applicable to the Telegraphers dispute.

*Lewellyn v. Fleming*, 10 Cir., 154 F.2d 211, is of no pertinence here. It denied the validity of an individual contract, of a railroad and a non-union employee, which gave rights contrary to a collective bargaining agreement. The Lewellyn opinion recognizes the J.I. Case and Telegrapher decisions noted above.

Be that as it may, the question of forestalling and changing of obligations requires consideration, interpretation, and application of the MPA, the Union agreement in effect when the individual agreement was made, and the bargaining agreement made ten months after the individual agreement.

The Railway Labor Act as amended, see 45 U.S.C. § 151 et seq., specifically provides for disposition of labor disputes between a railroad employer and its employees. The Act distinguishes "major" from "minor" disputes. A major dispute presents "basic differences with respect to working conditions or existing agreements, or new agreements or addition of new provisions." *St. Louis S.W. Ry. Co. v. Brotherhood of R.R. Signalmen*, 10 Cir., 665 F.2d 987, 990. Major disputes go first to mediation under 45 U.S.C. § 155. Id. A minor dispute presents an interpretation of labor agreements and is determined by the National Railway Adjustment Board, Id., and 45

U.S.C. § 153. The findings and order of the Adjustment Board are conclusive on the parties and may be set aside only for three specified reasons not here applicable. *Union Pacific R. Co. v. Sheehan,* 439 U.S. 89, 93, 99 S.Ct. 399, 58 L.Ed.2d 354; see also 45 U.S.C. § 153(q).

*Richins v. Southern Pacific Company,* 10 Cir., 620 F.2d 761, involved a merger as does the instant case. Employees sued both the railroad and the Union claiming that demotions and layoffs violated the applicable bargaining agreement. They claimed that the Union breached its duty of fair representation by failing to enforce the agreement. With regard to the claim against the railroad, the court said, Id. at 762:

"If this suit had been brought against the Railroad only, we would have no difficulty in determining the proper disposition. The dispute between the plaintiffs and the Railroad is clearly a 'minor' one— that is, 'between an employee or group of employees and a carrier or carriers growing out of . . . interpretation or application of agreements concerning rates of pay, rules, or working conditions.' . . . As the Supreme Court has emphatically told us, 'Congress considered it essential to keep these so-called 'minor' disputes within the Adjustment Board and out of the Courts. . . .' " [Citations omitted.]

The court reversed the trial court's dismissal of the action because of the claim of unfair representation by the Union and the doctrine of "hybrid jurisdiction." In the case at bar the plaintiff makes no claim against the Union. We are not concerned with "hybrid jurisdiction." The statements in Richins regarding minor disputes are applicable and controlling.

In the final analysis, the dispute here relates to the interpretation and application of the MPA and the bargaining agreements. Because neither party has put the entire text of the MPA or the other agreements in the record, our discussion is limited to the specific portions mentioned by the parties. MPA, § 6, R. p. 9, covers economic aspects of transfers but does not mention seniority adjustment. Plaintiff does not claim that his transfer allowances were less than those provided by § 6, MPA. Section 8, MPA (see Appellee's Brief, p. 10), recognizes the BN right to transfer resources, including manpower, throughout the merged system and authorizes implementation agreements to that end. Section 10, MPA (Appellee's Brief, p. 10), contains a provision for dispute settlement by arbitration. Instead of requesting arbitration, Chambers brought this suit.

The case before us presents a claim by one employee that the railroad has not recognized the seniority, or paid the allowances, to which he is entitled on a transfer. We are convinced that these are minor disputes for determination by the Adjustment Board, not the courts. *Richins,* supra, 620 F.2d at 762, and *Goclowski v. Penn Central Transportation Co.,* 3 Cir., 571 F.2d 747, 755–756. The district court did not have subject matter jurisdiction and properly dismissed the case.

Our decision on the jurisdictional question makes it unnecessary for us to consider the question of abatement or survival upon the death of the plaintiff.

Affirmed.