**BROTHERHOOD OF LOCOMOTIVE ENGINEERS and Ronald L. Hall, Petitioners,**

v.

**INTERSTATE COMMERCE COMMIS-SION and United States of America, Respondents.**

**Burlington Northern Railroad Company, Intervenor.**

**No. 88–2120.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 11, 1989.

Decided Sept. 13, 1989.

Harold A. Ross, Cleveland, Ohio, for petitioners.

Laurence H. Schecker, I.C.C., Washington, D.C., for appellee.

Thomas J. Knapp, Fort Worth, Tex., for Burlington Northern.

Before LAY, Chief Judge, ARNOLD and BOWMAN, Circuit Judges.

LAY, Chief Judge.

The ICC approved the merger of Burlington Northern (BN) and the St. Louis—San Francisco Railway (Frisco) in March of 1980. *Burlington Northern, Inc.—Control and Merger—St. Louis–San Francisco Ry.,* 360 I.C.C. 784, 965–67 (1980), *aff'd sub nom. Missouri–Kansas–Texas R.R. v. United States,* 632 F.2d 392 (5th Cir.1980),

*cert. denied,* 451 U.S. 1017, 101 S.Ct. 3005, 69 L.Ed.2d 388 (1981) (*"BN/Frisco Merger"*). In approving the merger, the ICC adopted the Merger Protective Agreement (MPA) entered into by the Brotherhood of Locomotive Engineers (BLE) and BN as the conditions of employee protection required under 49 U.S.C. § 11347 (Supp. V 1982).[1] *BN/Frisco Merger,* 360 I.C.C. at 947–48. The MPA provided economic protection in the form of allowances and moving expenses for employees when dismissed or when displacement is causally related to the merger. *Id.* at 947.

Six years after the merger, BN sold the Frisco line between Monett, Missouri and Fort Smith, Arkansas to the Arkansas & Missouri Railroad Company (AMR). The ICC approved the transaction in July 1986. Since AMR was a non-carrier prior to acquiring the Fort Smith line, in its discretion the ICC did not impose labor protection conditions, noting that many employees of BN were already beneficiaries of the existing labor protection. *See Arkansas and Missouri R.R., et al.—Exemption from 49 U.S.C. §§ 10901, 11301, 11322 and 11343,* Finance Docket No. 30764 (served July 17, 1986); *see also* 49 U.S.C. § 10505(a) (1982) (ICC's authority to exempt a carrier from requirements of the ICA).

Ronald L. Hall was an engineer for Frisco and worked on the Fort Smith, Arkansas line. He was working for Frisco at the time of the BN–Frisco merger and was a protected employee of BN under the MPA. Upon the sale of the Fort Smith line to AMR, Hall's job was abolished. He received a position in Tulsa, Oklahoma under his displacement rights. Hall filed a claim for benefits under the MPA, alleging that the merged BN system was responsible for downgrading the Fort Smith line and thus responsible for the ultimate sale of the line.

BN denied Hall's claim. The BLE invoked the procedures of Article I, section 11 of the MPA to refer the dispute to arbitration. By independent agreement between BN and BLE a Public Law Board was established. The arbitral board sustained Hall's claim for coverage, with one of the three board members dissenting. The board found the sale of the line was related to the merger and that Hall became a displaced employee by AMR's elimination of all engineers' positions on the Fort Smith line. The board therefore sustained Hall's claim.

BN then petitioned the ICC for review of the award. The BLE objected to BN's petition, claiming the ICC lacked the necessary jurisdiction. On June 23, 1988, the ICC issued a decision vacating the arbitrator's award and denying Hall's claim. *Burlington Northern, Inc.—Control & Merger—St. Louis–San Francisco Ry.,* Finance Docket No. 28588 (Sub–No. 24) (served June 23, 1988).

The BLE asserts that the ICC lacks jurisdiction to review the arbitration award because the procedures governing review of the award are, under the MPA, those set out in section 3 of the Railway Labor Act, *see* 45 U.S.C. § 153, Second (1982); and because the ICC has no independent power to review an arbitration award. The BLE argues alternatively that assuming the ICC has jurisdiction, it exceeded its own standards of review and failed to review the award under the traditional standards for review of arbitration awards.

The ICC urges that its jurisdiction lies within its authority to impose employee protective conditions under the Interstate Commerce Act. The ICC relies on *United Transp. Union v. Norfolk & W. Ry.,* 822 F.2d 1114 (D.C.Cir.1987), *cert. denied,* 484

---

**1.** The Interstate Commerce Act requires that when a rail carrier is involved in a merger it must provide a "fair arrangement * * * protective of the interests of employees who are affected by the transaction * * *." 49 U.S.C. § 11347.

In the present merger the Commission observed:

After analyzing these agreements, we are convinced that the interest of carrier employees covered thereby will be adequately and fairly protected by the terms of the agreements, and we find that the agreements do not render the proposed transaction inconsistent with the public interest. When we adopt a labor agreement, we impose it as a condition to our approval of the transaction [citing *Norfolk & Western R.R. v. Nemitz,* 404 U.S. 37, 92 S.Ct. 185, 30 L.Ed.2d 198 (1971)].

*BN/Frisco Merger,* 360 I.C.C. at 948.

U.S. 1006, 108 S.Ct. 700, 98 L.Ed.2d 651 (1988), which holds that decisions of arbitral boards under ICC imposed labor protection are orders of the ICC, *id.* at 1119–20, and as such are not governed by the procedures of the RLA. The ICC likewise urges that the D.C. Circuit has recently upheld its jurisdiction to review arbitration awards to determine whether they are in accord with the standards governing ICC imposed labor protective conditions. *International Bhd. of Elec. Workers v. ICC,* 862 F.2d 330 (D.C.Cir.1988). The circuit court noted that although the Interstate Commerce Act is silent with respect to arbitration awards, deference to the ICC interpretation of the statute allows discretionary review by the ICC. *Id.* at 336.

We need not pass upon the propriety of these cases. Here the ICC did not create its own labor protective conditions. In lieu thereof it adopted as protective conditions the voluntary MPA agreement of the parties.[2] In doing so we find the BLE is correct in that the entire agreement constitutes the terms of the labor protective conditions. It is well established that these terms cannot be altered by the parties. *See Norfolk & W.R.R. v. Nemitz,* 404 U.S. 37, 44, 92 S.Ct. 185, 189, 30 L.Ed.2d 198 (1971). Under the same rationale we disagree with the ICC that it may adopt some of the terms of the agreement and disregard others.

The MPA provides that "employees adversely affected by the transaction" would be protected by the agreement. Article I, section 1(b) defines "transaction" as:

a change in operations, services or facilities on the railroad pursuant to the merger authorized by the Commission's Order, which results in the direct or indirect displacement or dismissal of any protected employee or the transfer of work which results in a protected employee being required to change his residence.

The procedure for the arbitration of disputes is set forth in Article I, section 11. Disputes "with respect to the interpretation, application or enforcement of any provision of this Agreement" must be submitted to arbitration. Article I, section 11(a).

Letter of Intent No. 7, which was appended to the MPA, states that:

[w]ith reference to Section 11 of the Agreement for Protection of Employees, it is understood that the parties to a dispute that would be referable to an Arbitration Board created under Section 11 may agree to submit such dispute to a Public Law Board under the procedures set forth by the National Mediation Board pursuant to the amended Railway Labor Act.

The BLE and BN agreed pursuant to a "Memorandum Agreement" that such an arbitration board should be established under the provisions of "Section 3, Second of the Railway Labor Act * * * and Article I, Section 11 of the Merger Protective Agreement between Burlington Northern, Inc./St. Louis–San Francisco Railway Co. and the Brotherhood of Locomotive Engineers * * *." The Agreement also provided that "[t]he rendition of such award shall be in accordance with the provisions of Section 3, First and Second of the Railway Labor Act, and Section 11 of Article 1 of the Merger Protective Agreement * * *."

The BLE claims that the arbitration award in this case was an award by a special board under Section 3, Second of the Railway Labor Act, 45 U.S.C. § 153, Second. The BLE argues that Letter of Intent No. 7 expressly authorizes the creation of this RLA board. The Memoran-

---

**2.** In merger cases the ICC has normally prescribed labor protection using the standards adopted in *New York Dock Ry.—Control—Brooklyn Eastern Dist. Terminal,* 360 I.C.C. 60 (1979), *aff'd sub nom. New York Dock Ry. v. United States,* 609 F.2d 83 (2nd Cir.1979), and as required by 49 U.S.C. § 11347. The ICC relies on *United Transp. Union,* 822 F.2d 1114, 1122 (D.C.Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 700, 98 L.Ed.2d 651 (1988), holding that the arbitration award did not draw its vitality from the RLA but from the ICA. This case is clearly distinguishable. Here the arbitration award procedure, although approved by the ICC, draws its vitality from the agreement between the parties. Unless the parties lack authority to enter into the protective agreement, and they do not, *see* 49 U.S.C. § 11347, the ICC, once it has approved the agreement cannot later retract from it.

dum Agreement which established this RLA board stated in unequivocal terms that "[t]here shall be established a Public Law Board Pursuant to the provisions of Section 3, Second, of the Railway Labor Act[.]" The agreement also provided that the board's award would be final and binding upon the parties and would have the same force and effect as awards of the National Railroad Adjustment Board. The agreement specified that the provisions of section 3, Second of the RLA and the Rules and Regulations of the National Mediation Board would apply to this board.

The BLE argues that it therefore follows that the exclusive means to obtaining review of the award is under the procedures of Section 3, Second of the Act: "Compliance with such awards shall be enforceable by proceedings in the United States district courts in the same manner and subject to the same provisions that apply to proceedings for enforcement of compliance with awards of the Adjustment Board." 45 U.S.C. § 153, Second (1982). The procedures for review of an award of an Adjustment Board are located in section 3, First. Section 3, First (q) provides that:

> [i]f any employee or group of employees, *or any carrier * * *,* is aggrieved by any of the terms of an award or by the failure of the division to include certain terms in such award, then such employee or group of employees or carrier may file in any United States district court in which a petition under paragraph (p) could be filed, a petition for review of the division's order.

45 U.S.C. § 153, First (q) (1982) (emphasis added). This section establishes that United States district courts have exclusive jurisdiction to review awards issued by RLA boards under Section 3, Second of the Act.[3]

Under 49 U.S.C. § 11347 the ICC "shall require" that the carrier provide a fair arrangement. However, the second sentence of that provision provides: "Notwithstanding this subtitle, the arrangement may be made by the rail carrier and the authorized representative of its employees."

■ The ICC argues that, even though the MPA was a voluntary agreement reached by the BLE and BN, the MPA became an ICC-imposed condition upon the adoption of the agreement in the Commission's merger approval order. *See Nemitz,* 404 U.S. at 43, 92 S.Ct. at 188–89. As an ICC-imposed condition, the Commission argues the MPA cannot oust the ICC from its own jurisdiction. The terms of the MPA, however, specifically adopt the procedures of the RLA, which, in turn, vest jurisdiction to review arbitral awards in the district courts. The ICC cannot now alter the terms of the parties' negotiated agreement. Contrary to the argument of the ICC, and the intervenor (BN), this is the conclusion reached by the District of Columbia circuit court in *Brotherhood of Ry. Carmen v. I.C.C.,* 880 F.2d 562 (D.C.Cir.1989), which rejected the ICC's argument that 49 U.S.C. § 11341(a) (1982) of the Interstate Commerce Act, allows the ICC to override terms of a collective bargaining agreement. Section 11341(a), known as the "immunity provision," allows the ICC to exempt a carrier from the requirements of "all other law" in order to carry out an approved merger. The circuit court specifically rejected the ICC's theory that "all other law" included privately negotiated contract terms. Therefore, the terms of this contract, adopting the procedures of the RLA,[4] cannot be abrogated by the ICC.

---

**3.** The jurisdiction provision states:

The court shall have jurisdiction to affirm the order of the division or to set it aside, in whole or in part, or it may remand the proceeding to the division for such further action as it may direct. On such review, the findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order. The judgment of the court shall be subject to review as provided in sections 1291 and 1254 of Title 28.

45 U.S.C. § 153, First (q).

**4.** In recent litigation before the Supreme Court, the court recognized that the RLA and the ICA serve to complement one another and are to be

Thus, we hold that the ICC had no jurisdiction under the circumstances of this case to set aside the arbitration award in favor of Hall.

**Merits**

Although we hold the ICC did not have jurisdiction to review the arbitration award, we review the merits here because we find the ICC's newly adopted review procedure violates governing standards of review relating to arbitration awards.

■ In assuming its newly designated role to review arbitration decisions, the ICC stated it will only review arbitrator's decisions of recurring or significant issues regarding interpretation of labor protective conditions. The ICC observed that it will not review issues of causation, calculation of benefits and the resolution of other factual questions. *Chicago & North Western Transp. Co.—Abandonment,* 3 I.C.C.2d 729, 736 (served April 28, 1987) (the so-called *Lace Curtain* case), *aff'd, International Bhd. of Elec. Workers v. ICC,* 862 F.2d 330 (D.C.Cir.1988). This award involved a factual question of causation as to whether Hall was affected by a "transaction" as defined by the MPA. The precise inquiry was whether Hall was placed in a worse position with respect to his compensation and work conditions as a result of a "change in operations, services or facilities on the railroad pursuant to the merger authorized by the Commission's Order." MPA, Article I, section 1(b).

In *McPherson v. Union Pacific Motor Freight Co.,* Finance Docket No. 30,000 (sub no. 45) (served Apr. 21, 1987), the ICC held that "[t]his factual issue of 'causation' (i.e., whether particular employees are 'affected' by a Commission-approved transaction or whether adverse consequences to employees were the result of such a transaction) *is not for the Commission's determination, but is within the proper province of an arbitrator or the parties' negotiations.*" *Id.* (citations omitted and emphasis added). It is clear that whether or not the injury is a result of a "transaction" under the MPA is a factual issue of causation. Review in this case is clearly outside the limited scope and deferential review established by the ICC in *Lace Curtain,* as was pointed out by Commissioner Lamboley in his dissent from the reversal of the arbitral award in this case. The ICC thus failed to properly apply the standards it promulgated in *Lace Curtain.*

The parties' agreement specifically provided the award "shall have the same force and effect as awards of the National Railroad Adjustment Board." Therefore, we find, even if it may be argued that the ICC had jurisdiction under the MPA, the ICC was additionally bound by the review standards of section 153, First (q) of the RLA. The ICC and BN's argument that the award is not governed by the RLA is not persuasive where the parties' negotiated agreement provided for RLA coverage.

The Supreme Court has stated that arbitral awards under the RLA may be set aside "only for the three reasons specified [in 45 U.S.C. § 153, First (q) ]." *See Union Pacific R.R. v. Sheehan,* 439 U.S. 89, 93, 99 S.Ct. 399, 401–02, 58 L.Ed.2d 354 (1978). The findings and order of the board are conclusive and may be set aside only where there is a failure to comply with the requirements of the RLA, where the award exceeds the board's jurisdiction, or where there is fraud or corruption by a member of the board. 45 U.S.C. § 153, First (q) (1982). The factual review conducted by the ICC demonstrates only that it would reach a different result. The decision of the ICC to vacate the arbitral board's award, based on this review, does not fall within the reasons specified by the statute.

Finally, we hold the ICC erred in substituting its judgment as to factual findings.[5] The Supreme Court has stated that courts are to decide only questions of arbitrability and not the merits of grievances. *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358,

---

interpreted to accomplish the end. *Pittsburgh & Lake Erie R.R. v. Railway Labor Executives' Ass'n.,* —— U.S. ——, 109 S.Ct. 2584, 105 L.Ed.2d 415 (1989).

**5.** We note the Department of Justice does not join the ICC in arguing that it may deviate from the normal standards of review of an arbitration award.

1360, 4 L.Ed.2d 1424 (1960). In *Lace Curtain,* the ICC relied on the narrow standard of review adopted in the *Steelworkers Trilogy.* In *United Steelworkers,* 363 U.S. 593, 80 S.Ct. 1358, the Court held that the arbitrator's award must only "draw[ ] its essence from the collective bargaining agreement." *Id.* at 597, 80 S.Ct. at 1361. The Court stated, "[a] mere ambiguity in the opinion accompanying the award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." *Id.* at 598, 80 S.Ct. at 1361.

The ICC found that the board used "an improperly broad standard in its determination." The ICC stated that "the Board concluded, 'but for' the merger, the former Frisco would still have been operating trains over the Fort Smith line." *Burlington–Northern, Inc.—Control & Merger,* Finance Docket No. 28563 (sub. no. 24) (June 8, 1988). The ambiguity arising out of the arbitral board's use of "but for" in one sentence of the award is not sufficient to find the arbitrator exceeded his authority. When the award is read as a whole, it is clear that the arbitrator did not use a mere "but for" standard in finding that Hall's dismissal was a direct result of a change in operations, services, or facilities pursuant to the BN–Frisco merger authorized by the ICC. In essence, after reviewing the changes implemented by the merged carrier, the arbitrator found a reasonably direct causal connection between the merger and the loss of Hall's job.

This court has held that, "[i]t is not the proper function of a reviewing court to set aside a decision rendered by an arbitrator within the scope of the arbitrator's jurisdiction even where the court would itself have reached a different result had the merits been submitted to it in the first instance." *Armstrong Lodge No. 762 v. Union Pacific R.R.,* 783 F.2d 131, 135 (8th Cir.1986). We find that the ICC erroneously reviewed a finding of fact, and substituted its judgment for that of the board. Therefore, even if the ICC did have jurisdiction to review the award, we would reverse on the merits.

The cause is remanded and the ICC order is vacated for lack of jurisdiction.