783 F.2d 131
 121 L.R.R.M. (BNA) 2658, 104 Lab.Cas. P 11,787
 ARMSTRONG LODGE NO. 762, a Labor Organization, Appellant,
v.
UNION PACIFIC RAILROAD COMPANY; Missouri Pacific Railroad
Company, and Brotherhood of Railway Carmen of the
United States and Canada, Appellees.
 No. 85-1570.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 13, 1986.
Decided Feb. 4, 1986.
 
 Donald H. Louden, Kansas City, Mo., for appellant.
 Leonard Singer, Kansas City, Mo., for Union Pacific and Missouri Pacific.
 Thomas A. Woodley, Washington, D.C., for appellee Broth. of Ry. Carmen.
 Before LAY, Chief Judge, BRIGHT, Senior Circuit Judge, and ROSS, Circuit Judge.
 ROSS, Circuit Judge.
 
 
 1
 Armstrong Lodge No. 762 (AL), a local lodge of Union Pacific Railroad Company (UP) carmen, appeals from a judgment of the district court[1] upholding an arbitrator's award. For reversal, AL argues that the district court erred in failing to vacate the award on the grounds: (1) that the arbitrator misconstrued the scope of his jurisdiction; and (2) that the scope of the arbitration hearing was unfairly restricted and constituted a denial of due process. We affirm.
 
 I. FACTS
 
 2
 The pertinent facts are not in dispute. Following the 1982 merger of UP and the Missouri Pacific Railroad Company (MP), a dispute arose concerning the consolidation of the UP and MP carmen in the Kansas City area. Both carriers, the international union certified to bargain for the UP and MP carmen (Union), and the local lodge of MP carmen favored the dovetailing of existing seniority rosters of the carmen. AL, the local lodge of UP carmen, opposed this method of consolidating the workforces because it did not make any adjustment for the fact that between 1973 and 1980 certain MP carmen, pursuant to their collective bargaining agreement, received retroactive seniority for time spent as apprentices. The UP carmen did not have comparable retroactive seniority benefits in their collective bargaining agreement.
 
 
 3
 When the Interstate Commerce Commission (ICC) approved the UP-MP merger in 1982 it imposed conditions for the protection of employees set forth in New York Dock, New York Dock Ry.--Control--Brooklyn Eastern District, 360 I.C.C. 60 (1979), aff'd sub nom. New York Dock Ry. v. United States, 609 F.2d 83 (2d Cir.1979) (New York Dock Conditions), pursuant to 49 U.S.C. Sec. 11347.[2] In accordance with New York Dock Conditions, the seniority dispute in this case was submitted to final and binding arbitration.
 
 
 4
 A hearing was held before an arbitrator on October 6, 1983. At that hearing the parties entered into a letter agreement specifying three issues to be arbitrated and rescheduling the hearing for October 21, 1983. A hearing was held as provided in the letter agreement on October 21, 1983. The parties presented prehearing briefs and oral argument. The carriers and the MP carmen argued that the rosters should be consolidated on the basis of seniority dates established under the applicable UP and MP collective bargaining agreements. AL's position was presented by a lawyer for the UP-Joint Protective Board which acts as an intermediary between the local lodge and the international union. On behalf of the UP carmen, it was argued that dovetailing seniority rosters on the basis of existing seniority dates would result in an unfair advantage for MP carmen due to the retroactive seniority obtained by some MP carmen which was unavailable to UP carmen. The alternatives proposed on behalf of the UP carmen were to consolidate the seniority rosters by using the date of hire or by eliminating retroactive seniority for the MP carmen or by giving retroactive seniority to the UP carmen.
 
 
 5
 Following the submission of posthearing briefs the arbitrator rendered his written decision rejecting the UP carmen's position. He stated:
 
 
 6
 It is obvious to this Neutral that the proposals by the UP Carmen to modify existing journeymen seniority dates either by an across the board change to date of hire in the craft or by calculating new seniority dates to eliminate retroactive seniority received by certain MP Carmen, would abrogate or modify existing collective bargaining agreements and the rights of Carmen under those agreements. As such these proposals are beyond the jurisdiction of a Neutral to implement under Article I, Section 4.
 
 
 7
 Assuming, arguendo, such jurisdiction exists, this Neutral must conclude that the proposals are inappropriate for application in this particular case. In terms of fairness and equity, they make no provision for the adjustment of retroactive seniority, albeit limited, received by UP Carmen. Furthermore, no precedent has been cited for their use in the railroad industry generally or in situations involving consolidations of shop craft work specifically. Significantly, the Carmen's organization, the collective bargaining representative for all employees involved in this proceeding, has endorsed another proposal.
 
 
 8
 Jt.App. 16-17.
 
 
 9
 After the arbitrator's decision, AL filed suit in district court seeking to vacate the arbitrator's award and alleging a breach of the Union's duty of fair representation. The case was submitted to the district court on cross motions for summary judgment and on a record containing 156 stipulated facts. The district court found no grounds to vacate the arbitrator's award and granted the carriers' motion for summary judgment. The district court further found no breach of the Union's duty of fair representation. Following the district court's refusal to amend its original judgment, AL filed this appeal, but did not contest the finding that the Union fulfilled its duty of fair representation.
 
 
 10
 AL raises two issues on appeal relating to the arbitration proceedings. First, AL argues that the district court should have vacated the arbitration award in this case because the arbitrator exceeded the scope of his authority. Second, AL contends that the award should have been vacated because the scope of the arbitration hearing was unfairly restricted and constituted a denial of due process.
 
 II. DISCUSSION
 A. Scope of Arbitrator's Jurisdiction
 
 11
 Judicial review of decisions subject to the Railway Labor Act, 45 U.S.C. Secs. 151-188 (RLA) is narrow. A court may set the decision aside on any of three grounds: (1) failure to comply with the provisions of the RLA, (2) failure of the decisionmaker to confine himself to matters within the scope of his jurisdiction, and (3) fraud or corruption. 45 U.S.C. Sec. 153 First (q). See Union Pacific Railroad Co. v. Sheehan, 439 U.S. 89, 93, 99 S.Ct. 399, 401, 58 L.Ed.2d 354 (1978). Although a decision of an arbitrator functioning pursuant to the New York Dock Conditions and not the National Railroad Adjustment Board, is under review in this case, the district court concluded and we agree that the same limited standards of review are applicable.[3]
 
 
 12
 The parties stipulated below that neither failure to comply with the requirements of the RLA, nor fraud or corruption, is at issue. The sole basis for the requested relief is that the arbitrator exceeded the scope of his authority.
 
 
 13
 AL contends that the arbitrator exceeded the scope of his authority in two respects. First, AL argues that the arbitrator misconstrued the scope of his authority when he held that it was beyond his jurisdiction to alter the terms of the existing collective bargaining agreements. This contention cannot serve as a basis for vacating the award in light of the fact that the arbitrator proceeded to assume he had such jurisdiction and still rejected the UP carmen's position. Second, AL contends that the arbitrator exceeded the scope of his authority because his decision allegedly failed to comply with the New York Dock Conditions and 49 U.S.C. Sec. 11347. This allegation, although described in jurisdictional terms, is in reality an attack on the reasoning of the arbitrator's award. As such it fails to establish a basis for vacating the arbitrator's award. Whether the arbitrator erred in reaching a particular result is irrelevant to the determination of whether the arbitrator acted within his jurisdiction. Lackawanna Leather v. United Food & Commercial Workers, 706 F.2d 228, 231 (8th Cir.1983) (en banc). It is not the proper function of a reviewing court to set aside a decision rendered by an arbitrator within the scope of the arbitrator's jurisdiction even where the court would itself have reached a different result had the merits been submitted to it in the first instance. Daniel Construction Co. v. International Union of Operating Engineers, 738 F.2d 296, 299 (8th Cir.1984).
 
 
 14
 Because courts reviewing the decisions of arbitrators do not sit to reconsider the merits of the dispute between the parties the dispositive issue before us in this case is whether the arbitrator acted within his jurisdiction in resolving the seniority dispute. The Supreme Court has held that an arbitrator does not exceed the scope of the issue presented to him as long as the arbitrator "[stays] within the areas marked out for his consideration." United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 598, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); Lackawanna Leather, supra, 706 F.2d at 231.
 
 
 15
 In applying this principle to the instant case, we conclude, as did the district court, that the arbitrator was within his jurisdiction when he decided the seniority issue. The issue before the arbitrator was the manner in which the UP and MP carmen's seniority rosters were to be consolidated. This issue was properly submitted to the arbitrator by letter agreement and pursuant to the procedural requirements of Article I, section 4 of the New York Dock Conditions. The arbitrator determined that dovetailing the existing seniority rosters was the appropriate method. There can be little doubt that, in so concluding, the arbitrator stayed well within the area marked out for his consideration. We hold that AL failed to establish that the arbitrator exceeded the scope of his jurisdiction and that the district court properly declined to vacate the arbitrator's award on this basis.
 
 B. Due Process
 
 16
 AL's other argument on appeal is that the circumstances leading up to the continuance of the arbitration proceeding set for October 6, 1983, and the resulting limited arbitration on October 21, 1983, constituted a denial of due process. AL contends that the district court should have vacated the arbitrator's award under the doctrine of duress because the carriers and the arbitrator improperly demanded that some issues be dropped in return for a continuance. Thus according to AL, not all issues were fairly and fully presented at the subsequent arbitration proceeding.
 
 
 17
 These contentions are without merit. AL, through its representatives at the October 6, 1983 meeting, agreed in writing to the carriers' conditions in exchange for the continuance it sought. Further, AL had a full and fair opportunity to present its position on the central seniority issue, through the UP-Joint Protective Board lawyer, at the October 21, 1983 arbitration proceeding. In light of these facts we hold that AL failed to establish any factual basis to support its allegation of a due process violation.
 
 III. CONCLUSION
 
 18
 We affirm the district court's judgment enforcing the arbitrator's award in all respects.
 
 
 
 [1]
 The Honorable John W. Oliver, Senior United States District Judge for the Western District of Missouri
 
 
 [2]
 49 U.S.C. Sec. 11347 provides as follows:
 When a rail carrier is involved in a transaction for which approval is sought under sections 11344 and 11345 or section 11346 of this title, the Interstate Commerce Commission shall require the carrier to provide a fair arrangement at least as protective of the interest of employees who are affected by the transaction as the terms imposed under this section before February 5, 1976, and the terms established under section 405 of the Rail Passenger Service Act (45 U.S.C. 565). Notwithstanding this subtitle, the arrangement may be made by the rail carrier and the authorized representative of its employees. The arrangement and the order approving the transaction must require that the employees of the affected rail carrier will not be in a worse position related to their employment as a result of the transaction during the 4 years following the effective date of the final action of the Commission (or if an employee was employed for a lesser period of time by the carrier before the action became effective, for that lesser period).
 
 
 [3]
 Although 45 U.S.C. Sec. 153 First (q) applies directly to awards of the National Railroad Adjustment Board, courts have applied the same standards of review to arbitration awards rendered by public law boards. Sorensen v. Chicago & North Western Transp. Co., 627 F.2d 136, 138 (8th Cir.1980); Brotherhood of Ry., Airline & Steamship Clerks v. Kansas City Terminal Ry. Co., 587 F.2d 903, 905-06 (8th Cir.1978), cert. denied, 441 U.S. 907, 99 S.Ct. 1997, 60 L.Ed.2d 376 (1979)