**AMERICAN TRAIN DISPATCHERS DEPARTMENT OF THE INTERNATIONAL BROTHERHOOD OF LOCOMOTIVE ENGINEERS, Petitioner,**

v.

**DULUTH, MISSABE AND IRON RANGE RAILWAY COMPANY, Respondent.**

Civ. No. 5–94–44.

United States District Court,
D. Minnesota,
Fifth Division.

Oct. 17, 1994.

Michael S. Wholly and Aaron R. Bransky, Duluth, MN, for petitioner.

Patricia Ann Burke, Minneapolis, MN, for respondent.

## ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the Respondent's Motions for a Stay, and for an extension of the discovery deadline that was contained in the Court's Scheduling Order of June 24, 1994.

A Hearing on the Motions was conducted on October 6, 1994, at which time the Petitioner appeared by Michael S. Wholly and Aaron R. Bransky, Esqs., and the Respondent appeared by Patricia Ann Burke, Esq.

For reasons which follow, we grant both Motions.[1]

### II. *Factual and Procedural Background*

On April 7, 1994, the Petitioner commenced this action to enforce Award No. 29719 of the National Railroad Adjustment Board ("Board"), Third Division, pursuant to the provisions of the Railway Labor Act. See, *Title 45 U.S.C. § 153, First (p)*.[2] Award

1. No opposition to the Defendant's Motion for an extension of the discovery deadline has been voiced and, therefore, we will grant the Motion. Accordingly, the Defendant need not respond to the pending discovery requests of the Plaintiff until 30 days after the Stay we impose upon these proceedings has been lifted, and discovery will close 45 days after the lifting of the Stay in this matter.

2. As here pertinent, Section 153, First (p), provides as follows:

> If a carrier does not comply with an order of a division of the Adjustment Board * * *, the petitioner * * * may file in the District Court of the United States for the district in which he resides * * *, a petition setting forth briefly the causes for which he claims relief, and the

order of the division of the Adjustment Board in the premises. Such suit in the District Court of the United States shall proceed in all respects as other civil suits, except that on the trial of such suit the findings and order of the division of the Adjustment Board shall be conclusive on the parties * * *. The district courts are empowered, under the rules of the court governing actions at law, to make such order and enter such judgment, by writ of mandamus or otherwise, as may be appropriate to enforce or set aside the order of the division of the Adjustment Board: *Provided, however,* That such order may not be set aside except for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's

No. 29719 arose from a grievance which the Petitioner filed in 1990, and which contested the Respondent's assignment of the Chief Train Dispatcher's duties to a management employee. According to the Petitioner, the parties' labor agreement required that those job assignments be awarded to that employee who held the greatest seniority as a Train Dispatcher—an individual who was not the management employee to whom the Respondent had assigned those duties. As a consequence, the Petitioner sought a declaration that its interpretation of the labor agreement was correct, and an award of all back pay, for the Chief Train Dispatcher's position, since July 2, 1990.

In turn, the Respondent argued that it had properly interpreted Rule 8[3] of the parties' labor agreement and had appropriately assigned the work in question. By Award No. 29719, the neutral Referee[4] determined that neither party was entirely correct in its position. On the one hand, the Referee found that the Respondent had not correctly filled the Chief Train Dispatcher's slot but, contrary to the position that had been advanced by the Petitioner, he also determined that the award of back pay would not compensate the Chief Train Dispatcher's replacement for every day that he did not hold that job from July 2, 1990. Rather, the Referee explained his back pay award as follows:

> The injury here to the Organization is the lost opportunity to provide relief for the Chief on one day per week, and for vacations and other absences, as provided in Rule 8. Notwithstanding what was decided in Third Division Award 28133, a fair reading of Rule 8 contemplates that a weekly rest day will be assigned to the Chief Train Dispatcher which rest day will be a part of the weekly schedule of a Train Dispatcher assignment. When the Carrier changed the title of the Chief Train Dispatcher to that of Assistant Superintendent it deprived the Organization of this work opportunity. Accordingly, eligible Dispatchers are entitled to recovery of this lost work opportunity. Additionally, Dispatchers lost the opportunity to provide relief for annual vacations and other absences during this time.

> Therefore the Board will allow one days [sic] pay per week, plus time for annual vacations and other temporary absences, whatever they may have been, to be paid to the senior qualified Dispatcher, as determined by a check of Carrier records.

*Award No. 29719*, at page 7 [Exhibit No. 1 to Respondent's Memorandum of Law in Support of Motion].

The Referee's reference to Award No. 28133 forms the basis for much of the Respondent's

---

jurisdiction, or for fraud or corruption by a member of the division making the order. [Emphasis in original].

3. Rule 8 of the parties' collective bargaining agreement reads as follows:

A weekly rest day shall be assigned to each excepted chief train dispatcher position as a part of the weekly schedule of work for any train dispatcher assignment.
Relief of excepted chief train dispatchers for their annual vacation, and other temporary periods of absence from their positions, shall be made by qualified train dispatchers from the seniority district involved.
Any permanent appointment to the position of excepted chief train dispatcher shall be made from train dispatchers holding seniority as such. The Carrier shall be the sole judge as to selection.
An employee who relieves the Chief Dispatcher for any reason shall be compensated at a flat rate of $65.58 per day as of October 1, 1971, subject to any future general wage increase or decrease applicable to train dispatchers.

Being an "excepted" position, the Chief Train Dispatcher's job was not subject to the general provisions of the parties' labor agreement. Apparently, the dispute arose when an Assistant Superintendent, who had been properly performing the duties of the Chief Train Dispatcher's job, retired in July of 1991. Upon that retirement, the Respondent chose not to fill the vacancy in the Chief Train Dispatcher's position, but appointed a successor Assistant Superintendent to perform his predecessor's duties, including the supervision of the dispatching office—work which had been assigned to the Chief Train Dispatcher.

4. The Board's Third Division, which issued the Award at issue here, is composed of ten members, 5 of whom are selected by the railroads and five by the national labor organizations of the employees. *Title 45 U.S.C. § 153, First (h).* In the ordinary course of events, the members select a neutral person, known as the "Referee," to render an Award which represents the decision of the majority of the Division's members. *Title 45 U.S.C. § 153, First (1).*

insistence that the Referee's decision is unenforceable because: "(1) the [Board] failed, in issuing the award, to comply with the Railway Labor Act, 45 U.S.C. §§ 151 et seq., and (2) the award fails to conform, or confine itself, to matters within the scope of the [Board's] jurisdiction." *Answer*, at page 6.

By way of additional background, in Award No. 28133, the Board was also requested to construe the language of the parties' Rule 8. There, the Petitioner had requested a back pay award for each of four occasions on which the Chief Train Dispatcher left his assignment in the middle of a shift to attend meetings. On those occasions, no relief was assigned to fill the Chief Train Dispatcher's vacancy. In denying the Petitioner's grievance, the Board determined that the assignment of a replacement to the Chief Train Dispatcher's position was a management decision and, in the absence of an improper assignment, no back pay was due or owing. In the words of the Board:

> Thus, whether any one will be assigned to relieve the chief during absences of this unique nature is a managerial prerogative left unaltered by the rule. The rule comes into play after it is determined if the job is filled or if someone actually performed the chief's duties (which is not the case here).

> Accordingly, under these circumstances, the agreement, under the interpretation of the rule, isn't violated unless someone other than a qualified train dispatcher from the seniority district involved is assigned the chief's duties in his absence.

> \* \* \* \* \* \*

Claim denied.

*Award No. 28133*, page 3 [Exhibit No. 8 to Defendant's Memorandum of Law in Support of Motion to Stay].

Based upon this decision, which was issued on September 25, 1989, and is "final and binding" upon the parties, the Respondent contends that the Referee in Award No. 29719 did not have jurisdiction to award back pay for every occasion that a temporary vacancy existed in the Chief Train Dispatcher's position, but was contractually constrained to limit the back pay to those occasions when the vacancy was improperly filled. See, *Title*

*45 U.S.C. § 153, First (m)* ("The awards of the * * * Adjustment Board shall be stated in writing * * *, and * * * shall be final and binding upon both parties to the dispute."). In contrast, the Petitioner contends that the Referee in Award No. 29719 "properly repudiated the erroneous findings of Award No. 28133 regarding relief of the Chief Train Dispatcher during temporary vacancies as well as on its weekly rest day." *Award No. 29719*, Labor Member's Concurring and Dissenting Opinion [Exhibit 1 to Defendant's Memorandum in Support of Motion to Stay].

As a consequence of the parties' divergent interpretations of the remedy provided in Award No. 29719, the Respondent calculated and paid an amount of back pay that has been contested in these enforcement proceedings as less than one-half of the amount that the Petitioner claims is due and owing. Apparently as a response to the commencement of this action, on or about July 29, 1994, the Respondent filed a Request for an Interpretation of Award with the Board, as expressly allowed by the Railway Labor Act. *Title 45 U.S.C. § 153, First (m)* ("In case a dispute arises involving an interpretation of the award the division of the Board upon request of either party shall interpret the award in the light of the dispute."). In view of the filing of that request for clarification, the Respondent urges that this action be stayed in order to permit the Board an opportunity to issue its interpretative Award which, the Respondent contends, should not produce a delay of more than three months. The Petitioner opposes the requested stay as, in its view, the Respondent's request for an interpretative ruling is both dilatory and unwarranted.

### III. *Discussion*

At the outset, we accept that our jurisdiction to review the determinations of the Board is statutorily limited. Unless the Board's Award is affected by a failure to comply with the requisites of the Railway Labor Act, by a failure to conform, or confine itself, to matters within the scope of the Board's jurisdiction, or by fraud or corruption by a member of the Board, the findings and order of the Board shall be "conclusive on the parties." *Title 45 U.S.C. § 153, First*

*(p);* see also, *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n,* 491 U.S. 299, 304, 109 S.Ct. 2477, 2481, 105 L.Ed.2d 250 (1989); *Union Pacific Railroad Co. v. United Transportation Union,* 3 F.3d 255, 258 (8th Cir.1993) (scope of review of Board's award is "among the narrowest known to the law"), cert. denied, —— U.S. ——, 114 S.Ct. 881, 127 L.Ed.2d 76 (1994), quoting *International Ass'n of Machinists v. Northwest Airlines,* 858 F.2d 427, 429 (8th Cir.1988).

■ Moreover, we are fully mindful that, in enacting the Railway Labor Act, Congress was endeavoring to promote stability in the labor-management relations of the nation's railways, by providing an effective and efficient remedy for the resolution of those disputes which arise out of the interpretation of collective bargaining agreements. *Union Pacific Railroad Co. v. Sheehan,* 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978), reh'g denied, 439 U.S. 1135, 99 S.Ct. 1060, 59 L.Ed.2d 98 (1974). Unquestionably, "[t]he Adjustment Board was created as a tribunal consisting of workers and management to secure the prompt, orderly and final settlement of grievances that arise daily between employees and carriers regarding rates of pay, rules and working conditions." *Id.* We are keenly sensitive to any delay in the resolution of contract disputes in the railway industry which may frustrate these laudatory purposes.

■ Nevertheless, the touchstone of our analysis is not constricted to expedition for expediency's sake. As a practical matter, since the Respondent has filed its Request with the Board for an interpretation of Award No. 29719, the prospect of coexisting and, perhaps, conflicting explanations of the same Award has emerged. Given the deference we extend to the decisional process of the Board, we see no drawback in awaiting

any clarification that the Board may shed on the meaning of Award No. 29719. Deliberately, we refrain from addressing the merits of either party's interpretation of that Award but, undoubtedly, the Court will be called upon to determine the precedential weight, if any, to which Award No. 28133 is entitled— at least insofar as that Award may be found to be incompatible with Award No. 29719. Here again, we feel that, in the first instance, the Board should be permitted to address the impact that a prior construction should have upon a subsequent interpretation of the same contractual provision.[5]

In this respect, we are guided by the analysis of the Court of Appeals for the Seventh Circuit in *Brotherhood of Way Employees v. Burlington Northern,* 24 F.3d 937, 940 (7th Cir.1994), where the Court observed:

> In the world of labor arbitration, the preclusive effect of the first arbitrator's decision is an issue for a later arbitrator to consider, for "the scope of the arbitrator's authority [to determine the preclusive effect of an earlier award] is itself a question of contract interpretation that the parties have delegated to the arbitrator." * * * Federal courts do not enforce rules of preclusion divorced from the norms of the tribunals that rendered the judgments.

[Citations omitted].

While, ultimately, the Court may be called upon to consider the weight that the Board routinely extends to its prior Awards which, statutorily, are "final and binding" and "conclusive" upon both parties to a dispute, we find compelling merit in allowing the Board to first consider what precedential weight should apply, or whether circumstances have so changed as would command a different contractual interpretation than that which, apparently, has existed for the better part of a half-decade.[6]

---

5. The spectrum of grievance resolution mechanisms is expansive and, depending upon the intent of those who formulated a particular mechanism, the weight accorded to prior decisions will necessarily vary. We suspect that the spectrum may well extend from the coin toss—in which the precedential weight of prior coin tosses has only statistical importance—to a strict application of *stare decisis* so as to foster an enduring and reliable contractual relationship that is not susceptible to momentary vicissitudes. Where the

Board falls within this continuum may well be answered by the interpretive Award that the Respondent has requested.

6. We do note that the concurring and dissenting opinions of the parties to Award No. 29719 suggest that the Referee was aware of each of the party's interpretation of the Board's decision in Award No. 28133. Nevertheless, we find the Referee's allusion to Award No. 28133 enigmatic

Lastly, we would be hesitant to order a Stay if an appreciable prejudice would befall the Petitioner as a result of its imposition. Here, the Petitioner has acknowledged—and the Respondent does not disagree—that the District Court may direct the payment of post-Award interest if the circumstances so warrant. Given the Court's discretion to award post-Award interest, as coupled with the Petitioner's entitlement to attorney's fees if it "shall finally prevail," a delay of the magnitude that the Respondent has suggested, does not seem either inordinate or prejudicial. If the delay should prove to be more extensive, the Court can further address this issue as the circumstances develop.

NOW, THEREFORE, It is—

ORDERED:

1. That the Respondent's Amended Motion for a Stay [Docket No. 16] is GRANTED, and that this proceeding shall be stayed until fifteen (15) days after the National Railroad Adjustment Board's disposition of the Respondent's request for an interpretation of Award No. 29719.

2. That the Respondent's Motion to Modify Pretrial Order [Docket No. 17] is GRANTED and, accordingly, the Respondent need not respond to any discovery that has or will be served by the Petitioner until thirty (30) days after the Stay in this matter is lifted.

3. That the period for the completion of all discovery in this matter shall close forty-five (45) days after the Stay in this matter is lifted.

4. That the Court will conduct a telephonic Rule 16 Pretrial Conference, which the Court shall initiate, on January 13, 1995, at 10:00 a.m., in order to address the status of this matter at that time.

in several respects, not the least of which is his suggestion of some inconsistency between the holding in that Award and the granting of back pay for a "weekly rest day." Accordingly, we are uncertain of the construction that the Referee placed upon the Board's prior Award in order to reach the result obtained in Award No. 29719.