Jeffrey J. SCHNELLE, Plaintiff,

v.

**SOO LINE RAILROAD COMPANY, a Minnesota Corporation, d/b/a Canadian Pacific Railway, Defendant.**

Civ. No. 97–1596(JRT/RLE).

United States District Court,
D. Minnesota.

Aug. 18, 1997.

David A. Meyer, for Plaintiff.

Jeffrey A. Eyres, Leonard, Street & Deinard, P.A., Minneapolis, MN, Jeffrey R. Schmidt, Rider, Bennett, Egan & Arundel, L.L.P., Minneapolis, MN, for Defendant.

### ORDER

ERICKSON, United States Magistrate Judge.

#### I. *Introduction*

On August 13, 1997, the Court heard argument on the Plaintiff's Motion for a Protec-

tive Order, which would alter, in one or more proposed, alternative ways, the conduct of a disciplinary Hearing which was begun prior to the time that this action was commenced.

At the Hearing in this matter, the Plaintiff appeared by David A. Meyer, Esq., and the Defendant appeared by Jeffrey A. Eyres, and Jeffrey R. Schmidt, Esqs.

For reasons which follow, we deny the Motion on jurisdictional grounds.

## II. *Factual and Procedural Background*

The Plaintiff is a machine operator, who is employed by the Defendant, and who, on July 8, 1997, commenced an action, under the Federal Employers' Liability Act ("FELA"), see, *Title 45 U.S.C. § 51 et seq.*, arising from injuries, to his left foot, and to his right arm and upper extremity, that he claims to have sustained, during the course and scope of his employment, as a result of the Defendant's negligence. The left foot injury is alleged to have occurred on July 12, 1994, while the right arm injury was assertedly sustained on September 7, 1995, with a subsequent, mild aggravation of the arm complaints having purportedly been sustained in January of 1997. According to the Record before us, the Plaintiff returned to work following the incidents in 1994, and 1995, but his physician held him from work following the incident in January of 1977. On February 10, 1997, the Plaintiff's physician released him for work, but subject to a forty-pound weight restriction, and a prohibition on throwing any switches or on using any vibratory tools. The Defendant contends that, given these restrictions, there was no work available to the Plaintiff which he could physically perform. In turn, the Plaintiff contends that he applied for various posted jobs which, in his view, were within his physical restrictions.

On April 25 and 26, and on May 6 and 7, 1997, the Plaintiff was videotaped, while under surveillance by the agents of the Defendant, during which time he is said to have performed the following physical activities:

(1) holding a young child with his right arm for sustained periods of time; (2) working on the trailer hitch of a van and pulling and shaking the hitch hard enough to shake the entire van; (3) putting insulation boards on a house for prolonged periods of time, repetitively using a power saw to cut the insulation boards, and nailing the insulation boards to the house; and (4) carrying a large sheet of plywood that weighed between 50 and 70 pounds.

On May 14, 1997, the Plaintiff's treating physician amended his previous restrictions, and limited the Plaintiff to no lifting over fifty pounds, no use of vibratory tools, and no use of a sledge hammer.

On June 10, 1997, the Defendant's Chief Medical Officer reviewed the videotape of the Plaintiff, together with the Plaintiff's medical file, and concluded that, "given his abilities as demonstrated in the tapes, [the Plaintiff] clearly can return to the assistant foreman position given the job duties as [representatives of the Defendant] described to me." In view of the opinion expressed by the Defendant's Chief Medical Officer, the Defendant undertook a formal investigation in order "to determine the facts and circumstances and to place [the Plaintiff's] responsibility, if any, in connection with [his] being absent from September 11, 1995, until the present time under alleged false pretense of injury restrictions sufficient to prevent [him] from working." The investigation was undertaken in accordance with the terms of the governing Collective Bargaining Agreement, and the initial Hearing had been scheduled to commence on June 26, 1997, but was continued until July 10, 1997, at the instance of the Plaintiff's Union representative. As noted, on July 8, 1997, the Plaintiff commenced this FELA action and, in order to accommodate the Plaintiff's Motion for a Protective Order, the parties had agreed to continue the Hearing until August 15, 1997.[1]

---

1. Although we had endeavored to issue an Order in this matter prior to August 15, the press of the Court's calendar did not so allow. Accordingly, in a telephone conference with the parties, on August 14, 1997, the Court requested their acquiescence in a brief "stay put" agreement, by which the disciplinary Hearing would be postponed until the Court could rule on the pending Motion. The Court has been advised that the Defendant, and the Plaintiff's Union, have reached such an agreement.

For his part, the Plaintiff emphasizes that, as recently as July 11, 1997, his treating physician "has opined that nothing which Mr. Schnelle was performing at the time of defendant's videotaped surveillance violated the doctor's stated restrictions." Accordingly, the Plaintiff views the disciplinary proceeding as a gratuitous opportunity for the Defendant to question him, during the course of a proceeding in which his attorney is not allowed to participate, about matters which underlie, at least in part, his FELA claim. To assuage his apprehensions concerning the disciplinary Hearing, the Plaintiff seeks a Protective Order which would, alternatively: 1) allow his attorney to participate in the Hearing; 2) preclude the Defendant from utilizing the transcript of the Hearing in this proceeding; 3) reschedule the Hearing until the resolution of this action; 4) reschedule the Hearing until after he has given his deposition in this proceeding; or 5) reschedule the Hearing so as to be conducted in conjunction with the taking of his deposition. In response, the Defendant opposes each of these alternatives since, in the Defendant's view, the disciplinary Hearing will address a "minor dispute," which arises under the terms and conditions of the parties' collective bargaining agreement and, therefore, the Court's jurisdiction over the dispute is preempted by the Railroad Labor Act ("RLA"), Title 45 U.S.C. §§ 151 *et seq.*, for exclusive resolution by the National Railroad Adjustment Board ("NRAB"). See, *Title 45 U.S.C. § 184.*

### III. *Discussion*

The issue presented causes us to revisit our decision in *Stewart v. Burlington Northern R.R. Co.*, 173 F.R.D. 254, 257 (D.Minn. 1995), where, under strikingly similar facts, we concluded "that the Court is without authority to intercede in a 'minor dispute,'

which only has a tangential impact upon the claimant's prosecution of his FELA action." Notwithstanding an abundant opportunity to do so, the Plaintiff draws nothing to our attention which undermines the holding in *Stewart*.[2] In fact, contemporaneous to our decision in *Stewart*, the same issue confronted the District Court, the Honorable Michael J. Davis presiding, in *Rabine v. Burlington Northern R.R. Co.*, 1995 WL 924452 (D.Minn. 1995), where the Court reached the same result, although framed in the context of a Motion for a Temporary Restraining Order.[3]

Although not advanced by the Plaintiff, we do not overlook a potential distinction between our holding in *Stewart*, and the issue presented here. In *Stewart*, the grievance between the parties related to asserted inaccuracies in the Plaintiff's employment application which, the Defendant alleged, misrepresented the soundness of the Plaintiff's physical condition. An exploration of that asserted wrong, in the confines of a disciplinary Hearing, would only tangentially implicate the Plaintiff's pending FELA action, although the asserted misrepresentations related to the same physical condition that the Plaintiff claimed to have injured on-the-job. Here, the extent and degree of the Plaintiff's incapacity, as a result of his claimed arm injuries, will be the focus of the disciplinary proceeding. We do not regard this modest distinction, however, as requiring a different result. As we related, in *Stewart*, our hesitancy in altering the course and scope of the disciplinary Hearing is founded upon our conviction that the issue there presented is preempted, from Federal Court involvement, by the RLA. Our conclusion is guided by Eighth Circuit authority, as well as by the authorities in every other Circuit which has considered the matter. See, *Landfried v. Terminal Railroad Ass'n*, 721 F.2d 254, 255

---

**2.** Indeed, despite extensive submissions on the issue—inclusive of an unauthorized Reply Brief—the Plaintiff did not so much as cite the *Stewart* decision, notwithstanding that counsel, who argued this matter, appeared as counsel for the Plaintiff in *Stewart*. We underscore our prior admonition that, consistent with applicable authority, we expect practitioners before this Court "to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client

and not disclosed by opposing counsel." *D.Minn LR83.6(d)(2)*, adopting *Rule 3.3(a)(3) Minnesota Rules of Professional Conduct.*

**3.** In addition, the Defendant has furnished the Court with a number of decisions, from a variety of Minnesota District Courts, which have reached the same result that we do here, and which have not been addressed, let alone distinguished, by the Plaintiff.

(8th Cir.1983), cert. denied, 466 U.S. 928, 104 S.Ct. 1712, 80 L.Ed.2d 185 (1984) (claims for retaliatory discrimination for filing FELA claim are without jurisdiction of Federal Courts); *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir.1995) (citing cases from the Fifth, Seventh, Eighth and Ninth Circuits). It the Federal Courts do not have jurisdiction to address a complaint, that a railroad has retaliated against an employee for prosecuting his FELA claim, on the basis that the issue is preempted by the RLA for sole resolution by the NRAB, then the same preclusion logically applies to other Federal Court intrusions into the implementation of the RLA—such as the conduct of a disciplinary Hearing—notwithstanding the existence of a paralleling FELA claim.

Nor do we overlook the Plaintiff's argument that a Protective Order is necessary in order to preserve the integrity of the Court's administration of this action. The Plaintiff, however, is unable to identify any processes of this Court which are jeopardized by the conduct of the disciplinary Hearing.[4] True, the Plaintiff may be obligated to testify, during the course of that Hearing, in order to defend against the Defendant's complaint of wrongdoing, but we are aware of no general prohibition on the conduct of private safety, or grievance proceedings, merely because of a paralleling FELA action. While Plaintiff's counsel will not have the opportunity to participate in the disciplinary Hearing, no showing has been made that the processing of the Defendant's grievance, including the disciplinary Hearing and any subsequent appeals to the NRAB, is so procedurally deficient as to deny the Plaintiff a fair and impartial airing of his contractual rights. Indeed, were the procedures implementing the RLA so deficient, we are confident that the shortcomings would not have escaped the attention of Congress, or of the Plaintiff's Union, which represents his interests during the disciplinary proceedings.[5] More importantly,

---

4. Upon a proper showing, we have not been hesitant to restrict the discovery processes of this Court, in the context of an FELA action, where the interests of the Plaintiff would be unnecessarily trammeled. Compare, *Stewart v. Burlington Northern R.R. Co.*, 162 F.R.D. 349, 351 (D.Minn. 1995) (precluding conduct of Rule 35 orthopedic examination of employee by railroad where employee had recently completed such an examination for purposes of the railroad's wage continuation benefits), with *Sauer v. Burlington Northern R.R. Co.*, 169 F.R.D. 120, 124 (D.Minn.1996) (allowing conduct of Rule 35 orthopedic examination by railroad, notwithstanding the prior conduct of a neurological examination for purposes of a wage continuation program).

Of course, we recognize the Plaintiff's reliance upon *Smith v. Union Pacific Railroad Co.*, 878 F.Supp. 171 (D.Colo.1995), and *Vicary v. Consolidated Rail Corp.*, 942 F.Supp. 1146 (N.D.Ohio 1996), as holding that a Court should issue a protective Order so as to prevent a railroad from conducting a disciplinary Hearing, during the course of an FELA proceeding, in order to assure that the railroad would not gain a greater scope of discovery than authorized by Rule 26, Federal Rules of Civil Procedure. Respectfully, we continue to find such reasoning as ill-conceived. See, *Stewart v. Burlington Northern R.R. Co.*, 173 F.R.D. 254, 257 (D.Minn.1995). To intrude upon a grievance procedure, which was congressionally designed to be exclusive, under the guise of case management, seems short-sighted, at best. As the Court observed, in *International Association of Machinists and Aerospace Workers v. Eastern Air Lines, Inc.*, 826 F.2d 1141, 1149 (1st Cir.1987), quoting *Elgin, Joliet & Eastern R. Co.*

*v. Burley*, 325 U.S. 711, 752, 65 S.Ct. 1282, 1303, 89 L.Ed. 1886 (1945) (Frankfurter, J. dissenting), "[t]he industrial controversies of the railroad community 'were certainly not expected to be solved by ill-adopted judicial interferences, escape from which was indeed one of the driving motives in establishing specialized machinery of mediation and arbitration.'" Cf., *International Association of Machinists and Aerospace Workers v. Northwest Airlines*, 843 F.2d 1119, 1124 (8th Cir.1988). In our considered view, any incidental harm, which may attempt to traverse from the disciplinary Hearing to the FELA proceeding, can be effectively allayed by proper remedial measures. Moreover, we seriously doubt the likelihood that prejudice will befall either party, as a result of the disciplinary Hearing. The conduct of that Hearing envisions a two-way street, for the Union can also question the Defendant, who must respond without the presence of counsel, on the same subject matters as the Defendant should choose to question the Plaintiff. We have no basis to presume, and the Plaintiff offers none, that one set of questions would be more prone to prejudice than the other.

5. Nor are we persuaded that the Plaintiff's request for a Court-ordered delay in the conduct of the disciplinary Hearing is an appropriate remedy, even if we were jurisdictionally empowered to impose such a constraint. As we have observed elsewhere:

[W]e are fully mindful that, in enacting the Railway Labor Act, Congress was endeavoring to promote stability in the labor-management relations of the nation's railways, by providing

should any prejudice to the Plaintiff be demonstrated, as a result of the Plaintiff's testimony at the Hearing, he may properly file an appropriate Motion *in limine* to preclude the proffer of that testimony at Trial. See, *Stewart v. Burlington Northern R.R. Co.*, supra at 258.[6]

In sum, finding no basis for the relief that the Plaintiff requests, we deny his Motion for a Protective Order.

NOW, THEREFORE, It is—

ORDERED:

That the Plaintiff's Motion for a Protective Order [Docket No. 7] is DENIED.

an effective and efficient remedy for the resolution of those disputes which arise out of the interpretation of collective bargaining agreements. ... Unquestionably, "[t]he Adjustment Board was created as a tribunal consisting of workers and management to secure the prompt, orderly and final settlement of grievances that arise daily between employees and carriers regarding the rates of pay, rules and working conditions." ... We are keenly sensitive to any delay in the resolution of contractual disputes in the railway industry which may frustrate these laudatory purposes.
*American Train Dispatchers v. Duluth Missabe and Iron Range Railway Company*, 866 F.Supp. 420, 424 (D.Minn.1994).
We continue to view delay, in the resolution of disputes which are properly within the purview of the RLA, as undesirable in the absence of abundant cause. Here, no such cause has been shown.

6. In *Stewart v. Burlington Northern R.R. Co.*, 173 F.R.D. 254, 257 (D.Minn.1995), we made the following observation:

> Indeed, carried to its logical conclusion, the Plaintiff's argument [for a stay in the disciplinary Hearing] would encourage a railroad employee, who had committed a dischargeable offense, to file a claim, under the Federal Employers' Liability Act ["FELA"], so as to stay any investigation, and any subsequent dismissal from employment.

Given the timing here—where a portion of the disciplinary investigation was conducted prior to the filing of the Plaintiff's Complaint, we think our observation approaches the prescient. While the Plaintiff suggests that the filing of his lawsuit was solely prompted by an approaching limitations deadline, that limitation applied only to his left foot claim—a claim that is not implicated in the disciplinary Hearing.