Leslie SEGAL, Plaintiff,

v.

**TRANS WORLD AIRLINES, INC., Defendant.**

Nos. 91Civ.6099(JES), 96Civ.2374(JES), 97Civ.2225(JES).

United States District Court, S.D. New York.

Sept. 1, 1999.

Leslie Segal, Denver, Colorado, plaintiff pro se.

Alane C. Probst, Associate General Counsel, Trans World Airlines, Inc., St. Louis, Missouri, for defendant.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff Leslie Segal, a former flight attendant for Trans World Airlines, Inc. ("TWA") proceeding *pro se,* has commenced three actions against defendant TWA. In the first action, which she brought in 1991 (the "1991 action"), plaintiff asserts claims for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1981, and Article 15 of the New York State Human Rights Law, § 296(a) and (e) ("NYHRL"), alleging that TWA wrongfully dismissed her from employment in September 1989 on the basis of her interracial relationship with her fiancé Al Story ("Story"), an African–American TWA pilot. In the second action, which she commenced in 1996 (the "1996 action"), plaintiff moves to vacate an arbitration award by the System Board of Adjustment finding that TWA had just cause to terminate her employment. In the third action, which she commenced in 1997 (the "1997 action"), plaintiff moves to vacate an order

of the United States Bankruptcy Court for the District of Delaware permanently enjoining her from prosecuting any claim for money damages in the 1991 action before this Court. Pursuant to Rules 12(b), 12(c) and 56, Fed.R.Civ.P., TWA moves for dismissal, judgment on the pleadings, or for summary judgment in each of these actions. For the reasons that follow, the Court grants TWA's motions.

### BACKGROUND

Plaintiff, a white female, was employed by TWA as a flight attendant for twenty-one years. *See* Affidavit of Plaintiff Leslie Segal, *Pro Se*, in Response to Defendant TWA's Motions to Dismiss, dated December 12, 1996 ("Segal Aff."), ¶ 2. In 1985 she met Story, and they later became engaged to be married. *See id.* at ¶ 3. In 1989, Story was assigned to TWA's route from New York to Berlin, Germany, and plaintiff was assigned to TWA's route from New York to Milan, Italy. *See id.* at ¶¶ 2, 6.

On April 26, 1989, Story telephoned plaintiff and told her that he had injured his back while on duty. *See id.* at ¶ 6. Plaintiff decided to visit Story in Berlin and exchanged routes with another flight attendant so that she could work as a flight attendant on Flight 840 from New York to Frankfurt, Germany on April 30, 1989. *See id.* at ¶¶ 8–14. Upon arriving in Germany, plaintiff left her layover station in Frankfurt without permission and flew to Berlin, in violation of TWA's written regulations. *See id.*; Affidavit of Alane C. Probst in Support of Defendant's Motion for Judgment on the Pleadings or in the Alternative Motion for Summary Judgment, dated March 2, 1995 ("Probst Aff.") Exh. E at 402–406, Exh. H, Exh. I. Plaintiff remained with Story in Berlin for two days to care for him while he awaited a flight back to the United States. Because no one else was available to accompany Story on his journey, plaintiff decided to accompany Story as his personal attendant. *See* Segal Aff. ¶ 14.

On May 2, 1989, Plaintiff and Story arrived at TWA'S Berlin Station to take TWA Flight 931 to Frankfurt. *See id.* at ¶¶ 16–17. TWA attempted to borrow a stretcher for the flight, but the borrowed stretcher was incompatible with the TWA aircraft. Instead Story traveled in a regular seat on Flight 931. *See* Probst Aff. Exh. E at 556–57, 716. When Flight 931 landed, Story and Plaintiff were met by an ambulance and were driven to the aircraft for Flight 741 to New York. *See* Segal Aff. ¶ 16. Aboard the aircraft, Story's stretcher was placed across four seats in the first class cabin. *See* Probst Aff. Exh. E. Plaintiff, who was scheduled for regular duty as a flight attendant on Flight 741, failed to attend her crew briefing and failed to notify the rest of the crew that she would serve as Story's attendant while also working as a crew member. *See id.* at 34, 125–26, 212, 412–13, 418. Plaintiff's plan to act as Story's attendant violated TWA policy, which requires for any stretcher-borne passenger a personal attendant who is not a crew member. *See id.* at 600; Probst Aff. Exh. L.

During the flight, plaintiff offered limited assistance to the other flight attendants because her time was occupied with Story's needs. *See* Probst Aff. Exh. E at 92–93, 424–27, 735–36, 745–48. Plaintiff and Story engaged in displays of affection that some crew members found inappropriate and embarrassing, and she gave Story prescription narcotics while serving him champagne. *See id.* at 42, 85, 92–93, 215, 424–27; Probst Aff. Exh. G; Segal Aff. ¶¶ 20–21. During the flight, Story fell out of the stretcher and required the help of fellow passengers and other flight attendants in addition to plaintiff. *See* Probst Aff. Exh. E 37, 236, Exh. O, P, Q, R. As the aircraft was about to land, Story again rolled out of his stretcher onto the floor. Afraid that he would be injured during landing, plaintiff sat next to him on the floor to help brace him for landing. Plaintiff refused to obey an order to take one of the special jump seats designed for flight

attendants during landing, in violation of both TWA's written policy and federal safety regulations. *See* Probst Aff. Exh. E 45, 106, 150–52, 219–21, 449–50, 750.

After landing in New York, plaintiff and Story proceeded by ambulance to a hospital in New Jersey. *See id.* at 756. The following day, plaintiff called in sick for her scheduled flight and reported that she would be unable to work until May 5. Plaintiff provided TWA a telephone number in Colorado, rather than the New Jersey number where she could actually be reached. *See id.* at 453–54, 759–60.

On May 4, 1989, TWA commenced an investigation into both plaintiff's job performance and her claim for sick leave. *See* Probst Aff. Exh. V. In a letter dated May 4, 1989, TWA advised plaintiff that her sick leave would be exhausted on May 22, 1989, and that if she needed additional time she would have to apply for a medical leave of absence. *See id.* at Exh. KK. On May 5, 1989, TWA advised plaintiff that she had to provide medical documentation to substantiate her claimed illness by May 16, 1989. *See id.* at Exh. JJ. On May 23, 1989, plaintiff was designated as "missing in action." *See id.* at Exh. Y. On June 2, 1989, TWA again requested medical evidence to support her claimed illness no later than June 13, 1989. *See id.* at Exh. Z. On June 7, 1989, TWA received a letter from a Dr. Rollins stating that plaintiff was unable to perform her usual duties from May 3, 1989 until May 8, 1989. Plaintiff later admitted that Dr. Rollins was Story's physician and that he had never treated her for any illness. *See id.* at Exh. AA, Exh. E at 261, 460–61. On June 6, 1989, TWA contacted plaintiff at home and inquired about her condition. Plaintiff stated only that she had "stress."

*See id.* Exh. E at 464–68. On June 9, 1989, TWA's medical consultant determined that plaintiff's medical information was insufficient and requested a psychiatric evaluation. *See id.* at Exh. CC. TWA further concluded that plaintiff had demonstrated excessive absenteeism by missing 401 hours in the preceding two years. See *id.* Exh. E at 310–14.

Thereafter, Charles J. Thibaudeau, TWA's Staff Vice President of Employee Relations, approved the termination of plaintiff's employment because of her poor judgment, unprofessional behavior and disregard for TWA's rules and policies. At the time of his decision, Thibaudeau was unaware of the race of either plaintiff or Story. *See* Affidavit of Charles J. Thibaudeau in Support of Defendant's Motion for Judgment on the Pleadings or in the Alternative Motion for Summary Judgment, dated March 1, 1995. TWA then sent Plaintiff a letter dated August 18, 1989, advising her that TWA intended to terminate her employment. *See* Probst Aff. Exh. F.

Plaintiff challenged her termination by filing a grievance pursuant to her collective bargaining agreement between her union, the Independent Federation of Flight Attendants, and TWA.[1] *See* Affidavit of Alane C. Probst in Support of Defendant, Trans World Airlines, Inc.'s Motion for Summary Judgment or in the Alternative Motion to Dismiss, dated October 10, 1996, Exh. B. The parties' dispute was heard by the System Board of Adjustment, which held that TWA's termination of Plaintiff was for just cause. *See id.* at Exh. C. The Award of the System Board of Adjustment became final and binding on March 22, 1994. *See id.*

1. The labor relations of air carriers engaged in interstate commerce are governed by the Railway Labor Act, as amended, 45 U.S.C. § 151 *et seq.* Section 152 requires that there shall be a grievance procedure to be followed by the carriers and its employees in resolving disputes leading to a hearing by a System Board of Adjustment. Article 17 of the Collective Bargaining Agreement ("CBA") be-

tween TWA and the Independent Federation of Flight Attendants ("IFFA") provides for the compulsory submission of "minor disputes" to the System of Board Adjustment. *See* Second Affidavit of Alane C. Probst in Support of Defendant Trans World Airlines, Inc.'s Motion for Judgment on the Pleadings or in the Alternative Motion for Summary Judgment, dated October 10, 1996, Exh. B.

Plaintiff also filed two Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), the first dated August 25, 1989, and the second dated October 12, 1989. In both, plaintiff alleged claims for race and age discrimination and for retaliation. *See* Second Affidavit of Alane C. Probst in Support of Defendant Trans World Airlines, Inc.'s Motion for Judgment on the Pleadings or in the Alternative Motion for Summary Judgment, dated October 10, 1996, Exh. A, B. On June 10, 1991, the EEOC issued plaintiff a Notice of Right to Sue, and plaintiff thereafter commenced her first action before this Court by filing a Complaint on September 10, 1991. *See id.* at Exh. C.

Plaintiff's 1991 Complaint alleges claims solely under Title VII for TWA's alleged discriminatory discharge of plaintiff because of her interracial relationship with Story.[2] At the time plaintiff commenced this action, she was represented by counsel, but plaintiff's counsel subsequently withdrew, and plaintiff thereafter proceeded *pro se* in both the 1991 action and the other actions she subsequently brought before this Court. Following the withdrawal of her counsel, plaintiff filed an "Amended/Supplemental Complaint," dated May 24, 1996, in which she pleaded additional claims against TWA under 42 U.S.C. § 1981 and the NYHRL arising from substantially the same allegations as set forth in her original Complaint.

Meanwhile, TWA filed a voluntary petition for reorganization in the United States Bankruptcy Court for the District of Delaware on January 31, 1992. *See In re Trans World Airlines, Inc.*, Case No. 92–115, United States Bankruptcy Court for the District of Delaware. Plaintiff's pre-petition claims were stayed by operation of law, pursuant to 11 U.S.C. § 362. Thereafter, following a hearing before the bankruptcy court on September 22, 1992, the court disallowed plaintiff's claims against TWA, and the bankruptcy court's confirmation order of August 12, 1993, permanently enjoined any person from asserting any claim against TWA based on any act, omission, or transaction before the confirmation date, pursuant to 11 U.S.C. § 524(a)(2). On September 27, 1994, the bankruptcy court issued an order enjoining and restraining plaintiff from prosecuting her 1991 action before this Court. On plaintiff's motion, this order was later modified to allow plaintiff to prosecute her Title VII claim for reinstatement, but the bankruptcy court declined to modify its order to permit plaintiff to prosecute her claims for money damages against TWA. Plaintiff never appealed the decision of the bankruptcy court.

Plaintiff then commenced two new actions against TWA. In the 1996 action, plaintiff seeks judicial review of the System Board of Adjustment's arbitration award in favor of TWA. Plaintiff's third action is brought pursuant to Rule 60(b), Fed.R.Civ.P., as a petition to vacate the injunction issued by the bankruptcy court.

TWA has brought separate motions to dismiss or for summary judgment in each of plaintiff's three actions. In the 1991 action, TWA argues that plaintiff was not terminated under circumstances giving rise to an inference of discrimination, that plaintiff has come forward with no evidence of discrimination, and that the System Board of Adjustment's determination that TWA enjoyed good cause to discharge plaintiff collaterally estops plaintiff from further litigating the question of TWA's basis for terminating her employment. In the 1996 action, TWA argues that plaintiffs asserted grounds for vacating the System Board of Adjustment's arbitration award fall outside the narrow scope of review permitted this Court under the Railway Labor Act, as amended, 45 U.S.C. § 151 *et seq.* In the 1997 action, TWA argues that this Court is not the appropriate forum for plaintiff's motion to vacate and that plaintiff fails to allege any colorable basis for

---

**2.** Plaintiff did not allege any claim for age discrimination.

vacating the prior order of the bankruptcy court.

## DISCUSSION

### Plaintiff's 1991 Action

A court may grant summary judgment only if it determines that there are no genuine issues of material fact after a review of the pleadings, depositions, answers to interrogatories, admissions on file and affidavits. *See* Fed.R.Civ.P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

When ruling on a summary judgment motion, a court must construe the facts in a light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no genuine issue as to any material fact exists, the moving party is entitled to summary judgment as a matter of law. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

To prevail on a claim under Title VII, the plaintiff first bears the burden of establishing a *prima facie* case. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[3] This burden, however, is a light one. *See Chertkova v. Connecticut General Life Insurance Co.,* 92 F.3d 81, 87 (2d Cir.1996). A plaintiff establishes a *prima facie* case by showing (1) that she is a member of a protected class; (2) that she was qualified for the position she held; (3) that there was an adverse employment action taken against her; and (4) that the position remained open and the employer continued to seek applicants with the plaintiff's qualifications. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. A

plaintiff who establishes a *prima facie* case has set forth sufficient facts upon which a finding of discrimination by the employer can be predicated. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

The burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas,* 411 U.S. at 792, 93 S.Ct. 1817. If the defendant does so, then the plaintiff must establish that the action taken against him was the result of unlawful discrimination. *See id.*

In this case, TWA concedes that plaintiff is a member of a protected group because of her interracial relationship with Story. TWA argues, however, that plaintiff was not discharged under circumstances giving rise to an inference of discrimination because her gross misconduct preceding her termination clearly justified her termination. Indeed, TWA is correct that its proffered reasons for plaintiffs discharge—her disregard for TWA rules and safety regulations, insubordination, and extended unauthorized absence from duty—are amply supported by the evidence before the Court on TWA's motion for summary judgment. Thus, quite aside from whether plaintiff has carried her burden of showing a *prima facie* case of discrimination, it is abundantly clear that in the face of that proof plaintiff has come forward with no facts that would sustain a rational finding of discrimination.

The facts elicited by TWA support its claim that plaintiff was terminated because of her poor job performance. She violated TWA regulations by leaving her layover station in Frankfurt without permission to travel to Berlin. During the flight from Frankfurt to New York, she again violated

---

**3.** The same elements constitute a claim for employment discrimination under 42 U.S.C. § 1981 and the NYHRL as under Title VII. *See Choudhury v. Polytechnic Institute of New*

*York,* 735 F.2d 38, 44 (2d Cir.1984) (§ 1981); *Leslie v. BancTec Service Corp.,* 928 F.Supp. 341, 349 (S.D.N.Y.1996) (N.Y.HRL).

TWA regulations by attempting to act as Story's personal attendant while on duty as a member of the crew. Furthermore, she disobeyed a direct order to assume her seat for landing, in violation of both TWA's regulations and federal air safety regulations. After the flight, Plaintiff repeatedly failed to comply with TWA's requirements to document her claim for sick leave and admits that she submitted a false letter from a physician who never examined her.

 Plaintiff offers no evidence that defendant's proffered reasons were merely a pretext to discharge her because of her interracial relationship with Story. Plaintiff simply has no basis for connecting her fiancé's race to her discharge. Indeed, the TWA employee who bore ultimate responsibility for approving plaintiff's discharge had no knowledge of either plaintiff's or Story's race. Although plaintiff's fellow crew members were obviously aware that plaintiff and Story were not members of the same race, plaintiff has offered no evidence from which a reasonable juror could conclude even that plaintiff's fellow crew members on Flight 741 disapproved of the interracial relationship, much less that any such disapproval or hostility was the reason for their complaints about plaintiff's misconduct. Thus, TWA is clearly entitled to summary judgment dismissing plaintiff's claims for discriminatory discharge.[4]

### Plaintiff's 1996 Action

In the 1996 action, Plaintiff moves to vacate the arbitration award made by the System Board of Adjustment, arguing that the arbitrator did not properly weigh the evidence before her and reached clearly erroneous findings of facts and conclusions of law.[5] TWA moves to dismiss plaintiff's complaint or for summary judgment, arguing that plaintiff fails to allege any basis for vacating the arbitration award, that the Court lacks subject matter jurisdiction to hear Plaintiff's claims that TWA breached the collective bargaining agreement, and that, in any event, her claims for breach of collective bargaining agreement are barred by the applicable statute of limitations.

The labor relations of air carriers engaged in interstate commerce such as TWA are governed by the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*[6] Labor disputes arising under the RLA are classified as either "major" disputes or "minor" disputes. Major disputes concern the formation of or addition of new terms to a collective bargaining agreement. *See Elgin, Joliet & Eastern Railway Co. v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945). Minor disputes, however, are disagreements over the meaning of terms included in existing collective bargaining agreements. *Id.* The federal courts have jurisdiction to hear only major disputes. *Id.* The RLA requires that all minor disputes between an airline and its employees shall be resolved through a grievance procedure terminating with a hearing before a System Board of Adjustment. *See* 45 U.S.C. § 153.

---

4. Because plaintiff offers no evidence of discrimination, the Court finds it unnecessary to address defendant's alternative argument that the System Board of Adjustment's decision collaterally estops plaintiff from relitigating the issues decided in arbitration. The Court further notes that, to the extent that plaintiff asserts a claim for retaliatory discharge, plaintiff's claim must fail in the absence of any evidence in the record that plaintiff ever made any complaint regarding TWA's discriminatory treatment of any of its employees prior to her discharge. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir.1995) (*prima facie* case of retaliation requires showing

that plaintiff participated in protected activity by complaining of alleged discrimination).

5. Plaintiff also initially named the IFFA and National Railroad Adjustment Board as defendants in this action but voluntarily dismissed her claims against these defendants with prejudice. *See* Notice of Dismissal, October 2, 1996; Stipulation and Order, October 2, 1996.

6. Title II of the RLA, 45 U.S.C. §§ 181 *et seq.*, extended coverage of the original Railway Labor Act to airlines.

■ Although a party may seek federal court review of an arbitration award by the System Board of Adjustments by moving to vacate the award, the scope of judicial review is extremely limited. A district court may set aside or remand to further arbitration an award only

> for failure of the division to comply with the requirements of [the RLA], for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order.

45 U.S.C. § 153, First (q). This standard of review is "among the narrowest known to the law." *Union Pacific Railroad Co. v. Sheehan*, 439 U.S. 89, 91, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978). Where fraud is not at issue, the court's inquiry is limited to the sole issue of "whether the arbitrators did the job they were told to do—not whether they did it well, or correctly, or reasonably, but simply whether they did it." *CSX Transportation, Inc. v. United Transportation Union*, 950 F.2d 872, 877 (2d Cir.1991) (quoting *Brotherhood of Locomotive Engineers v. Atchison, Topeka & Santa Fe Railway Co.*, 768 F.2d 914, 921 (7th Cir.1985)); *see also Skidmore v. Consolidated Rail Corp.*, 619 F.2d 157, 159 (2d Cir.1979).

■ In the instant case, the narrow standard of review allowed by the RLA effectively precludes the Court from considering the grounds plaintiff advances for vacating the arbitration award. Plaintiff expresses dissatisfaction with the award because she disagrees with the arbitrator's assessment of the evidence before her and because the arbitrator allegedly committed errors of law by admitting hearsay evidence and misinterpreting the collective bargaining agreement. Entertaining such arguments on a motion to vacate would require the parties to relitigate before this Court the issues already decided in arbitration and would effectively defeat Congress's clear intent to keep such disputes "within the Adjustment Board and out of the courts." *Sheehan*, 439 U.S. at 94, 99 S.Ct. 399. Thus, this Court must dismiss plaintiff's petition to vacate the arbitration award.[7]

### Plaintiff's 1997 Action

In her 1997 action, plaintiff moves pursuant to Rule 60(b), Fed.R.Civ.P., to vacate the order of the United States Bankruptcy Court for the District of Delaware dated December 7, 1994, enjoining plaintiff from prosecuting any claim against TWA for money damages in the 1991 action before this Court and further granting plaintiff leave to seek by the 1991 action only the equitable remedy of reinstatement. Plaintiff asserts a number of grounds for vacating the order in her *pro se* petition to vacate the bankruptcy court's order, including numerous alleged errors of fact and law made by the bankruptcy court and the alleged fraud of TWA's counsel in making misleading legal arguments to the bankruptcy court.

■ Although Rule 60(b) does not specify the proper forum for presenting a motion for relief from judgment, the motion is generally brought in the court rendering judgment. *See Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 733 (2d Cir. 1980). The rendering court is almost always better able to resolve such a motion, as that court will be more familiar with the facts of the case and more conversant with the applicable law, especially where as here, counsel for both TWA and plaintiff previously argued before the bankruptcy court the very issues plaintiff now seeks to revisit by her instant motion. *See U.S. for Use and Benefit of Mosher Steel Co. v.*

---

7. Plaintiff's *pro se* petition to vacate the arbitration award also arguably alleges separate claims for TWA's breach of the collective bargaining agreement and the IFFA's breach of its duty of fair representation. Such claims are clearly time-barred under *DelCostello v.* *Int'l Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), as plaintiff filed the instant petition two years after the arbitration award became final and thus failed to comply with the requisite six-month statute of limitations.

*Fluor Corp.*, 436 F.2d 383 (2d Cir.1970). Indeed, it is unclear to this Court whether it even enjoys the jurisdiction to vacate the order of the bankruptcy court, the parties having cited and the Court having found no authority directly addressing this question. Furthermore, plaintiff has probably waived the arguments she now asserts by failing to appeal from the order of the bankruptcy court, for plaintiff has offered the Court no reason for her decision to proceed by the instant motion to vacate before this Court rather than an appeal to the United States District Court for the District of Delaware. The Court need not resolve these issues, however, for it is clear that the Court should decline to exercise such jurisdiction as it may have over plaintiff's petition. Allowing a plaintiff to bring in this Court a Rule 60(b) motion to vacate the order of a bankruptcy court of another judicial district would not only frustrate judicial economy but could also severely disrupt the bankruptcy court's administration of the debtor's reorganization and produce the risk of inconsistent decisions under the precedent of different federal circuits. *See In re Baldwin–United Corporation Litigation*, 765 F.2d 343, 347–49 (2d Cir.1985). The Court therefore dismisses plaintiff's petition without prejudice to its presentation before the United States Bankruptcy Court for the District of Delaware.[8]

## CONCLUSION

For all the foregoing reasons, the Court grants defendant's motion for summary judgment. The Clerk of the Court is directed to enter Judgment accordingly and to close this action.

It is **SO ORDERED.**

---

**8.** Plaintiff has also filed in each of the three actions multiple motions for sanctions against TWA, arguing that TWA has filed frivolous motions designed to frustrate her meritorious claims and unnecessarily multiply the proceedings in this Court. Because the Court

dismisses plaintiff's claims for substantially the reasons advanced by TWA in the motions to dismiss or for summary judgment that are the basis for plaintiff's motions for sanctions, the Court denies as baseless plaintiff's motions for sanctions.